Battle, J.
 

 Thomas F. Marrow died in the year 1846, having first duly made and published his last will and testament, which, after his death, was admitted to probate, and Drury S. Marrow, one of the executors therein named, qualified as sulch, and took upon himself the burden of its execution. The testator, in and by his said last will and testament devised and bequeathed as follows
 
 :
 
 — “ I give and bequeath to my loving wife, “as long as she is single after my death, all my property,.real, “ personal and mixed. I wish the negroes kept on the planta- “ tion if manageable, if not, I wish my executors to hire them “ privately to honest, humane men. My children I wish edu- “ cated from the proceeds of the plantation and funds on hand.
 
 “
 
 When my eldest arrives at legal age, I wish him to have a dis-
 
 “
 
 tributive share of the estate, and my other children, when they “ shall have arrived at the same age, I wish them to have a like “ share with their eldest brother, provided the estate has retained “ or accumulated property in the mean while. Should my wife
 
 “
 
 many again, I wish her to have what the laws of her country “ will allow her, viz., one third of the estate. If she remains “ single till her death, I wish my children to be made equal in
 
 “
 
 their several lots of my estate ; and if she marries and deducting her portion, then a like share of the residue.” The testator left at his death surviving him, his widow Parthena and six children, all of whom were then minors, to wit: Daniel J., William D., Thomas F. H., James A., Drury S. and Ann E. Marrow, and was seized and possessed of a valuable estate, consisting of two tracts of land, thirty or forty slaves, cash on hand, debts due him, household and kitchen furniture, stock of divers kinds, farming-utensils, &c. After the testator’s death, Drury S. Marrow, by virtue of his executorship, took into his possession the personal estate, paid the debts and other charges against the estate of the deceased, and kept the slaves together and worked them upon the plantation, with the exception of a few whom he
 
 *150
 
 hired out, and two whom he sold for their bad conduct. The executor received from year to year the interest, issues, hires, profits and rents of his testator’s estate, and applied the same to the support of his widow and children, and to the education of the latter, for which purposes they were more than sufficient,, leaving a considerable surplus to accumulate in his hands.
 

 The bill was filed June 28th, 1853, in the Court of Equity for Granville county, by Daniel J. Marrow, against the executor, the widow and the other children of his father, in which he set forth the facts above stated, and further that he had come to the age of twenty-one years, and he prayed to have the share of the estate, real and personal, to which he was entitled under his father’s will, assigned to him. But he alleged that doubts and difficulties had occured in the construction of said will, upon which the parties interested under it desired to have the advice of the Court.
 

 These doubts and difficulties were set forth in the bill in the following terms:—
 

 1. “ It is uncertain, whether the respective children of the said testator are entitled to be maintained until they respectively arrive at the age of twenty-one years and to be educated out of the said estate free of charge, or, whether the expenses of their respective maintenance and education as aforesaid, are to be charged to and accounted for by them respectively, in alloting and paying over to them respectively their respective shares of the said estate.
 

 2. “ It is also uncertain, in that part of the said will which directs that the children of the testator shall be educated out of the proceeds of the plantation or funds on hand, whether it means out of the funds on hand, or out of the proceeds or interest of the funds on hand.
 

 3.
 
 “
 
 It is also uncertain what is the meaning of the expression or term “funds on hand,” as whether the same mean only cash on hand at the testator’s death, or include other, and what other effects ; whether the testator’s children are to be maintained, as well as educated, out of the proceeds of the plantation and funds on hand, and' if educated only, then in what way, and out of what part or parts of said estate, they are to be maintained ; and whether, in case what is intended by the expression
 
 “
 
 funds on hand,” 'should be, or become insufficient with the proceeds of the
 
 *151
 
 plantation for the education, or the maintenance and education of the testator’s children, the proceeds arising from the sale of any part of the testator’s perishable property or any other, and what other part or parts of the said estate may be applied to that purpose.
 

 4. “ It is also uncertain, whether the testator’s widow is entitled to the whole of the issues, interest, hires, rents and profits of the said testator’s estate during het life or widowhood, or only to be maintained out of the same, and if not to the whole, or to a maintenance only out of the same, then, to what part of the same she is entitled, and whether, in the division of the estate in case she should marry again, she should be charged with and account for thfc expenses of her maintenance aforesaid.
 

 5. “Itis also uncertain, whether the children of the testator are entitled to any part, and what part of the interest, issues, hires, rents and profits aforesaid, further than to be maintained, or educated and maintained out of the same as aforesaid.
 

 6.
 
 “
 
 It is also uncertain, whether in case any of the said children should die.before arriving at the age of twenty-one years, the real or personal representatives of said child, would be entitled to any and what part or share of the said real and personal estate, or of the said interest, issues, hires, rents and profits of the same, and if not, then whether the said widow would become entitled under said will, in case of her marrying again, to any part of the share of the said real or personal estate to which such child would be entitled, if attaining the age of twenty-one years.
 

 7. “ It is also uncertain, what share or portion of the said real and personal estate ought to be allotted to the said children respectively, as they respectively become of age, and whether in case a full share of the same should be allotted and paid to one of the said children upon coming of age, such child would be entitled to any and what part of the interest, issues, hires, rents and profits subsequently accruing upon the residue of said real and personal estate, remaining undivided, and whether such child, having received such share, would, in case of the death af-terwards of another child under twenty-one years, be entitled to any further part or share of the said real and personal estate.
 

 8. “ It is also uncertain, whether in case one of the'daughters
 
 *152
 
 of the said testator should many under the age of twenty-one years, she would still be entitled to a maintenance out of the'said estate until her arrival at full age.
 

 9. “ It is also uncertain what share or- portion of the said real and personal estate the said widow would become entitled to, in the event she married again, whether to dower in the whole, or a part only, and what part of the said testator’s lands, and to a child’s part of the personal estate, or to one third of the real and personal estate absolutely, and 'if to a child’s part of the personal estate, whether the same is to be estimated with reference to the number of the children living at the testator’s death, or to the number living at .the time of said widow’s marriage.
 

 10.
 
 “
 
 And it is also uncertain whether the third or a child’s part, whichever it may be, to which the said widow would become entitled in the event of her marrying again, would be a third, or a child’s part of the estate, if any remaining undivided, at the'time of such marriage, or would be a third or child’s part of the part or parts of the said estate which may have been divided and allotted off to any of the children, as well as the part, if any, that may remain to be divided as aforesaid, and if the latter, then whether the said third or child’s part ought to be allotted to her exclusively out of the part, if any, remaining to be divided, or out of that and the part or parts which may have been already divided off and'allotted to a child or children.
 

 11. “It is also uncertain whether in case any child should' have allotted to him or her a full share of the estate as it stands at the time of such allotment, and the remainder of the said estate should afterwards from any cause become insufficient to afford to the- other children a like or equal share, such child would have to refund to the other children, and what proportion.
 

 ■ 12.
 
 “
 
 It is also uncertain whether the said widow is not entitled to the possession, management and control of the whole of the said estate, real and personal, during her life or widowhood, and whether the said executor, by assenting to the legacies of said will, and delivering over the said estate to the said widow as tenant for life, or widowhood, of the same, may not entirely disl charge himself from the trusts of the same, and from any responsibility therefor, and whether it is not his duty to do so.”.
 

 
 *153
 
 The defendants, Druvy S. Marrow, tbe executor, and Parthe-na Marrow, the widow, put in separate "answers, each admitting the facts stated in the bill, and submitting to such decree as the Court might please to make. The other-defendants, being minors, answered by a guardian
 
 ad litem,
 
 and prayed that in whatever decree the Court might make, their interest should be protected.
 

 The cause was set for hearing upon bill and answers, and was then, by consent, transmitted to this Court.
 

 This bill was filed before the case of
 
 Tayloe
 
 v.
 
 Bond,
 
 decided at the last term,
 
 ante
 
 5, was reported and published, otherwise, we presume it would not have been complicated by suggesting contingencies which may hereafter occur, and asking the advice of the Court as to what effect such contingencies may have upon the proper construction of the will of the plaintiff’s father. We are satisfied, upon further reflection, that the principles announced in the case referred to, are correct, and that when called upon to advise as to the proper construction of a will, or any part of it, we cannot give an opinion upon a state of facts not yet existing, and upon which no present direction or decree can be founded. If this were not so — if this Court were bound to answer every question which ah astute and ingenious counsel might ask upon the construction of a will under every possible combination of circumstances which might affect it, we might have and probably would have thrown upon us an amount of business which no human labor could perform. It is surely better for all practical purposes that the Court, even if it had any discretion in the matter, should confine "its advice and opinion to things to which it can give effect by its decree, than to waste its time in speculating upon questions in which the parties may never be interested. The propriety of this remark in reference to the present case, will be made strikingly manifest, by adverting to the 8th inquiry, which is,
 
 “
 
 whether in case one of the daughters of the said testator should marry under the age of twenty-one years, she would still be entitled to a maintenance out of the said estate, until her arrival at full age.” Now the testator seems to have had but one ■daughter, and she, if the children were named in the bill in the
 
 *154
 
 order of their births, was his youngest child. She may. die in infancy, she may never marry at all, or she may not marry until she arrives at full age, and in either of these events our opinion upon the inquiry as stated, would be of no use whatever, and yet either of these events is just as likely to happen as the one supposed. ' It will be quite time enough to answer the inquiry when the contingency shall' happen, and if the present bill be properly framed to obtain the answer, it may easily be retained for further directions. We say properiy framed, because there are questions arising upon the construction of a will, which the 'executor would have a right to call upon the Court for its advice and directions, which would not be open to a legatee when not interested in them.
 

 With these preliminary remarks as to the extent of our jurisdiction, in solving the doubts and difficulties arising upon the construction of the will now before us, we proceed to answer such of the inquiries as the plaintiff’s case requires, though it will be more convenient for us to do it in an order somewhat different from that in which the questions are propounded.
 

 In order to ascertain the share of his father’s estate to which the plaintiff is now entitled, it is necessary to consider what are the rights of the widow'under the will. It is clear, that the testator meant in the first place, to make a suitable provision for her. For that purpose, he gives her during widowhood all his property, real, personal and mixed. That clause taken alone, would medre her sole and universal devisee and legatee of his whole estate, whilst she should remain single; but there are other clauses in the will which necessarily modify and restrict the operation of this. He intended that his estate, whilst affording an ample support/to his widow, should also furnish the means of maintenance and education to his children during their minority, and a suitable outfit in life as they should respectively come to the age of twenty-one years. Until his widow should marry again, he wished the property kept together, remaining in her possession,, but managed under the superintendence of his executor. He seemed to think that the proceeds of the plantation and funds on hand, by which we understand the interest of the money dud him on bonds, notes and other securities, would be sufficient both
 
 *155
 
 for the support of his widow and the maintenance and education of his children. He accordingly appropriates such proceeds to that purpose ; and out of them, so long as they will afford it, m«ust be paid what is necessary to such maintenance and education, as are proper for children of their condition in life, leaving for the widow at all events, what she may need for her decent support, and then what may remain after the wants of the children are provided for., Had the testator known that his widow would never enter into a second marriage, he would probably have closed his will without adding any thing further; but he supposed such an event at least possible and he went on to provide for it, and it is necessary for us to ascertain what that provision is, for upon it depends the share of the estate which the plaintiff has at present the right to claim. If his widow shall marry again, the testator says that she shall then have what the laws of his country will allow her, viz., one-third of the estate. A doubt is here suggested, whether this clause means that she shall have dower in all his lands, to wit, one-third part thereof for life, and a child’s part of all his personal estate absolutely, or one-third of all his estate both real and personal absolutely.
 

 We think clearly that the former is the construction. Whilst his widow should remain single, the testator supposed that she would consider her interest as identical with those of her children
 
 \
 
 but upon her second marriage, her relation towards them must, at least with regard to property, be in some degree changed. In that event, his evident intent is, that she shall take from his estate, only so much as the law would have given her had he died intestate, or had she dissented from his will, and his mistake in supposing that such part would be one-third of his estate cannot make any difference. If he had meant that she should have one-third of the whole estate absolutely, he would probably have said so without reference to what the law would allow.
 

 The share to which the plaintiff’s mother will be entitled in the event of her second marriage, being thus ascertained and reserved, he will be entitled to a child’s part, to wit, one-sixth of the' residue. He cannot claim any part of the accumulated profits, because they belong to the widow, nor ought there to be charged against him, what has been expended upon his maintenance and
 
 *156
 
 education. The share which will be allotted to him he will take absolutely, without the liability to be called upon to refund the same, or any part of it. That he is not to refund, appears not only from their being no such requisition in the will, as from the clause, that upon coming of age each child is
 
 l<
 
 to have a
 
 like
 
 share with their eldest brother,
 
 provided the estate has retained or accumulated property in the mean while. ’ ’
 
 This clearly implies, that if the estate shall hereafter from any cause be diminished, the shares of the younger children may be less than that assigned to their eldest brother j but if the widow shall not marry again, then their shares may be made equal to the share allotted to the eldest out of the property set apart for her. To see that all the provisions of bis will should be carried into effect, the testator has invested his executor with a superintending power over the estate ; and the defendant, Drury S. Marrow, having voluntarily come forward and assumed tlje trust, he cannot now relinquish it while any of its duties remain to be performed.
 

 Having, upon a survey of the will in all its parts, given our exposition of it, we are prepared to answer all the enquiries upon which the plaintiff is now entitled to ask for our advice and direction.
 

 1. The children are all entitled to bp maintained and educated out of the profits of the estate, free of charge, and when they respectively arrive at the age of twenty-one years, they will be entitled to their respective shares, without being requiied to account for the expenses of their maintenance and education.
 

 2. The expenses of the maintenance and education of the children, are to be paid'out of the profits of the plantation, and the interest of the funds on hand.
 

 3. By the term, funds on hand, we understand the testator to mean cash on hand, and money due the estate by bond, note or other security. The profits of the plantation, and the interest of the money due the estate, have been hitherto under the prudent management of the executor sufficient for the purposes for which it was designed, and it is unnecessary now to enquire what is to be done should such profits and interest become insufficient for such purposes, as there is no suggestion made as to the probability, of such an everit. The children are respectively to receive such
 
 *157
 
 an education as is suitable to their estate and condition in life, in the section of countrywhere they reside. There is no suggestion that the education bestowed upon the plaintiff is not a suitable and proper one, and that may perhaps be assumed as a standard for the younger children ; but this must be left in some degree to the sound discretion of the executor.
 

 4. The widow is entitled, while she remains single, to all the issues, rents, profits and interest of the estate, so far as the same may be necessaiy in the first place, for her decent support, and then she is entitled to all that remains after the proper maintenance and education of the children. When she shall make it a practical question by marrying, it will be time enough to inquire what will then be her rights in this respect.
 

 5. The children, until they shall respectively come of age, are entitled to nothing out of the edtate but what is necessary for their maintenance and education.
 

 G. The event, upon which this inquiry is predicated, is entirely too contingent to make it necessary for us to decide it.
 

 7. The share to rvhich the plaintiff is now entitled, and to which each of the other children will be entitled upon his or her reaching full age, is one-sixth part of the capital of the whole estate, after deducting the widow’s dower in the land, and a child’s part of the personal property, to wit, one-seventh part thereof. This deduction must be made to await the contingency of her marrying again. The remaining part of the inquiry is based upon a contingent event, in which the plaintiff has at present no interest.
 

 8. We give the same answer to this inquiry as we did to the sixth.
 

 9. This question is answered in part in our response to previous inquiries, to wit, the fourth and seventh. Her part of the personal estate is to be estimated by the number of children now living. None having died since the testator’s death, it is unnecessary to decide whether the number must refer to his death or the present time.
 

 10. This, inquiry, so far as it is a practical one, has been already answered.
 

 11. The share now to be allotted to the plaintiff will be allot
 
 *158
 
 ted to him absolutely, and he cannot hereafter be called upon to refund any part of it. That is all which he has any interest in knowing at present.
 

 12. The executor must permit the widow to retain the possession of all the estate, except such part as may be from time to time allotted to the children as they respectively come of age ; but he cannot now divest himself of the trust which he has assumed.
 

 Per Curiam. Decree accordingly.