## Burdine v. White, et al.

(Decided January 11, 1917.)

Appeal from Madison Circuit Court.

1. Attachment—Fund in Court—Notice.—The notice specifying the fund to be attached required by section 207 of the Civil Code of Practice to be given to the clerk of the court may be included in the face of the order of attachment, and any language which would be reasonably calculated to inform the clerk of the fund sought to be reached is sufficient.

2. Attachment—Fund in Court.—Undue and uncollected bonds for the purchase price of the sale of land made by the master commissioner under the judgment of the court which have been reported with the report of sale which has been confirmed constitute "a fund in court" such as may be attached under the provisions of section 207 of the Civil Code of Practice.

3. Attachment—Fund in Court—How Attached.—A "fund in court" can be attached only by serving the order of attachment on the clerk of the court where the fund is, with a notice to him, as required by section 207 of the Civil Code of Practice.

CHENAULT, WALLACE & WALLACE for appellant.

JOHN NOLAND and G. MURRAY SMITH for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, and plaintiff below, George W. Burdine, recovered a judgment in an Illinois court against R. C. and J. M. Stapp for the sum of $627.00 and cost, which was entirely unsatisfied on January 13, 1915, when this suit was filed.

On September 14, 1914, a suit styled Richard Kanatzar's Heirs v. Richard Kanatzar's Heirs was filed in the Madison Circuit Court for the purpose of selling land which belonged to the decedent, Richard Kanatzar, jointly owned by his heirs, for the purpose of division among them. A judgment ordering the sale of the land was rendered in that case on October 8, 1914, and the land ordered to be sold by the master commissioner, who sold it on the 28th day of November, 1914, for the sum of $8,919.45, for which sum he took the bonds of the purchaser and reported the sale, which was confirmed.

The defendants in the Illinois judgment were heirs of Richard Kanatzar, and entitled to participate in the proceeds of the land sold under the judgment of the

Madison Circuit Court to the extent of 1/21 part thereof, which made their combined interest, after the payment of costs, the sum of $395.00. The purpose of this suit was to attach their interest in the proceeds of the land. Proper allegations were made in the petition for the procuring of an attachment, and the clerk of the Madison Circuit Court, who is the appellee, Roy C. White, was made a defendant to the suit and served with summons, as well as with an order of the attachment, as provided by section 207 of the Civil Code of. Practice.

In addition to the usual allegations setting up plaintiff's cause of action, the facts hereinbefore recited pointing out the fund sought to be reached were made in the petition. James L. Kanatzar, administrator of Richard Kanatzar, was also summoned as a garnishee, but that branch of the suit seeking to reach funds in his hands is not before us on this appeal.

The appellee, White, clerk of the Madison Circuit Court, entered a motion to quash the attachment so far as he was concerned, or rather so far as it sought to reach any of the proceeds of the sale of the land, upon the ground that that provision of section 207, *supra*, saying, "With a notice specifying the fund" had not been complied with by the officer who served the attachment, which motion was sustained and the attachment served upon the clerk, having for its object the purpose stated, was quashed and the attachment discharged. The plaintiff has filed a transcript of the record in this court and entered motion for an appeal. Omitting the style of the case, the name in which the attachment runs the direction to the officer, and the signature, the copy served upon the clerk reads:

"You are commanded to attach and safely keep the property of the defendants, R. C. Stapp and J. M. Stapp (especially that in the hands of Roy C. White, clerk of the Madison Circuit Court, and Jas. L. Kanatzar, as administrator of Richard Kanatzar, deceased, going to or belonging to the said R. C. Stapp and J. M. Stapp) in your county, not exempt from execution, or so much thereof as will satisfy the claim of the plaintiff in the action, George W. Burdine against R. C. Stapp, &c., for six hundred and thirty-four and 90/100 ($634.90) with 6% interest Dec. 9, 1914, and $30.00 for the cost thereof; and to summon the garnishees, Roy C. White, clerk

Madison Circuit Court, and Jas. L. Kanatzar, as administrator of Richard Kanatzar, deceased, to answer in this action on the 1st day of the next February term of the Madison Circuit Court; and you will make due return of this order on that day.

"Witness, Roy C. White, clerk of said court, this 13th day of January, 1915."

There was a written response filed to the motion made by the clerk to quash the attachment in which it appears that the defendants in the Illinois judgment were interested in no other property in the custody of the clerk except their interest as heirs in the Kanatzar suit. It was furthermore shown by the response that the clerk was notified, upon the occasion of the filing of the petition and the issuing of the attachment, of the precise fund sought to be reached; but as this was an oral notification, its sufficiency is questioned, and according to our view it is not deemed necessary to determine the question thus raised. A demurrer to this response was sustained, followed by the judgment, *supra.*

It will be seen that in the face of the order of attachment there is this sentence: "Especially that in the hands of Roy C. White, clerk of the Madison Circuit Court, and James L. Kanatzar as administrator of Richard Kanatzar, deceased, going to or belonging to the said R. C. Stapp and J. M. Stapp." There are no intervening rights of third parties involved. The question, then, is: Was the requirement as to specifying the fund as provided in the section of the code, *supra,* sufficiently complied with?

The precise question presented has not been passed upon by this court so far as we are aware. It is true that the question of the sufficiency of the notice required by subsection 3 of section 203 of the Civil Code was before this court in the case of Bell v. Wood, 87 Ky. 56, but it was there held that the phrase "with a notice specifying the property attached," required therein to be given to the person holding the attached property, applied only to attached corporeal property, and not to a debt which the one to whom the order of attachment is delivered owed to the defendant in the attachment. As the property sought to be reached in this case is not corporeal property, it is evident that the doctrine of that case can be of no service here, as section 207 does not appear to refer to corporeal property. We are

driven, then, to determine as an original proposition what constitutes "a notice specifying the fund," as required by section 207.

Notice, generally, may be defined as that which imparts information of the fact to the one to be notified, and is divided by the law into several classes, such as actual, constructive, implied and presumptive notice. But with these divisions we are not concerned, for manifestly the notice here meant is actual notice. Even this character of notice is susceptible of subdivisions such as information, which of itself gives actual notification, and that which, if prosecuted with ordinary diligence, would furnish information of the fact. But, without pursuing the classification of actual notice, or discussing it further, we are convinced that the notification found in the face of the order of attachment involved in this case, which we have quoted above, is a substantial if not a literal compliance with the provisions of the section of the code, and sufficient to fasten the property sought to be appropriated to the plaintiff's debt if it was otherwise subject to attachment.

As stated, there are no intervening rights apparent, and it is admitted that there was no property in court, except the fund sought to be reached, in which the defendants in the attachment were in any wise interested. Moreover, in the same order of attachment the administrator of the decedent is likewise summoned as a garnishee, and there can be no doubt but that these facts, coupled with the language quoted, were abundantly sufficient to have given actual notice to any one of ordinary intelligence of the purpose sought by the service of the order of attachment. By them the clerk was furnished with all the information requisite and necessary to inform him of the purpose of the attachment proceedings, and when this was done, the requirement, to say the least of it, was substantially complied with.

It cannot be contended, but if so it would be without merit, that the notice should be separate and apart from the order of attachment, as this would not only be absurd, but would be surrendering substance to idle form. We, therefore, conclude that the provision of the code was sufficiently followed so as to reach the property if subject to attachment.

A second point is that the property sought to be reached, being uncollected but reported sale bonds, did not constitute, and was not, "a fund in court." There can be but little doubt that it was "in court." It was incorporeal property, being a chose in action, and was evidently *in custodia legis,* being entirely under the control of the court. However, all property which is *in custodia legis* is not necessarily a fund, as, for example, the land sold in the Kanatzar case was *in custodia legis* upon the filing of the petition and the creation of the *lis pendens,* still it could not be considered, at least in so far as the meaning of the term as used in the section of the code, a "fund," for at that stage of the proceeding a creditor of any of the heirs owning the land could reach their interest by the service of an attachment upon the land itself, in the usual way. The same might be true as to other corporeal (including personal) property. It might be conceded and it is true that the meaning of the word "fund" is largely governed by its context. Some definitions would confine its scope and applicability to cash only, while in other connections its meaning is broadened so as to make it include capital and other resources. Some of the definitions given by Mr. Webster are: "Stock or capital; money and negotiable paper immediately or readily convertible into cash; available pecuniary resources."

In the case of Marrow v. Marrow, 45 N. C. 148, the term "funds in hand" as used in a will directing the education of the decedent's children from the proceeds of his plantation and the funds in hand was held to mean not only cash on hand but "money due the estate by bond, note or other security." In Words and Phrases, Vol. 4, page 3004, it is said: "The word 'fund' in its broader meaning may include property of every kind," citing In Re Tatum, 70 N. Y. Supp. 634. Other cases are therein shown wherein the term is given various meanings dependent upon the connection in which it is used.

In construing the meaning of a statute no rule is more fundamental or useful than that one which looks to the intention and purpose of the law-making body that enacted it. Without statutory authority property in *custodia legis* cannot be reached by garnishment proceedings. This rule is stated in 20 Cyc. 1022, thus:

"Money or property *in custodia legis* cannot be reached by garnishment proceedings in the absence of express statutory authority, since this would invade the jurisdiction of the court." And on page 1023 it is said:

"Thus the rule is well recognized that funds deposited with the clerk of the court by an order of the court having jurisdiction thereof, cannot be reached by garnishment proceedings by a creditor of a claimant having such funds."

To the same effect are sections 46 and 505 of Shinn on Attachment and Garnishment. With the purpose of remedying this condition of the law some of the States, including Kentucky, have enacted laws upon the subject, that of the latter being section 207 of the Civil Code.

It was held by this court in the case of Bottom v. McFerran, 19 Ky. Law Rep. 1266, that property or resources identical with that we have here could not be reached by serving a copy of the order of attachment upon the master commissioner, the person to whom the sale bonds were made payable, because, and only because, in order to reach such property the attachment should have been served upon the clerk of the court. It is not shown in that case whether the money had been collected by the master commissioner, but it is therein recognized that it is competent for the legislature to say upon whom the attachment might be served in order to fasten such assets for the benefit of a creditor of one of the parties entitled to participate therein. If we were called upon to justify the act of the legislature in designating the clerk as the one upon whom the attachment should be served, we would have but little difficulty in doing so, because he is the one in whose custody the law places the records of the proceedings out of which the fund in court arose, and he is the only person through whom the court speaks by its record. The master commissioner is but the agent of the court to obey its orders in effecting the sale.

The case of Bottom v. McFerran, *supra,* recognizes that there is a time, after sale by the master commissioner, and before distribution of the money by him, when the proceeds of the sale of land, such as we have here, may be reached by garnishment proceedings. During that time such proceeds are in two conditions, the one not due and uncollected, and the other due and collected. It must, therefore, follow that the property or

proceeds may be reached while in at least one of these conditions. We are unable to distinguish between the two so as to find a reason why the property may not be reached while in one as well as the other condition. To say that the statute does not apply so as to make the purchase price "a fund in court" until after the bonds have been collected and the fund converted into actual cash would frequently deprive a creditor of the opportunity of reaching it because of the great probability of its being paid out before garnishment proceedings could be instituted. Furthermore, we can see no difference as to the character of property represented by uncollected *sale bonds* and that represented by uncollected *notes* executed to a receiver of the court under its order to lend money which the receiver may have in his hands. There can be no sort of doubt but that property thus held by the receiver constitutes "a fund in court," and would consequently be the kind of property which might be reached under the provisions of section 207. To construe the phrase in question so as not to include property represented by sale bonds which are not due or uncollected would defeat, according to our view, the purpose of the legislature in enacting section 207, and would be extending to debtors interested in such property a favoritism not warranted by the law, or any principle of justice. We, therefore, conclude that the property represented by the sale bonds taken in the Kanatzar suit, and sought to be subjected by the attachment proceedings of the plaintiff, to the extent of the interest of R. C. and J. M. Stapp as heirs of Richard Kanatzar, although the bonds were not due at the time of the attachment, or, if due, were not collected, constituted "a fund in court" which might be reached by the process employed.

Wherefore, the motion for the appeal is sustained, the appeal granted, and the judgment reversed for proceedings consistent with this opinion.

The whole court sitting.