## Oliver & Dixon v. Braswell, Master Commissioner, et al.

(Decided December 16, 1921.)

### Appeal from Monroe Circuit Court.

1. Equity—How Orders Enforced—Writs.—Courts of equity may enforce their orders and decrees by any appropriate writ, allowable at law, or by attachment and imprisonment for contempt in disobedience of its orders.

2. Equity—How Orders Enforced—Writs.—As a general rule, a court of equity will not enforce an order or decree for the payment of money, by attachment and imprisonment, except as against a fiduciary or one occupying a position of trust, where a fund is the subject of the litigation, and the possessor of it is under the control of the court, or as against the officers of the court, and will not grant an attachment to enforce a judgment for a debt or claim upon assumpsit, or a contract.

3. Contempt—Punishment.—There can be no contempt for failure to pay money until an order of court has been made for that purpose and a failure to comply therewith, but where the court has jurisdiction to make the order failure to comply with it constitutes contempt, and the contemnor may be proceeded against by attachment and imprisonment until the contempt is purged.

4. Courts—Fund in Court—Commissioners—Officers of Court.—Attorneys are officers of the court, and a fund in the hands of the master commissioner of the court for purposes of distribution is a fund in court which it may protect from misappropriation or collect from one who mistakenly or otherwise withdraws it. If, therefore, the commissioner without an order of court to do so wrongfully pays any of the fund to an attorney in the case, the latter may be preceeded against by rule, and, upon failure to comply with the orders of the court for repayment, may be punished for contempt.

GILLIAM & GILLIAM for appellant.

JACKSON & DENHAM and W. W. CARTER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In settlement of proceedings contesting the will of Mrs. Mary E. Stovall, in which her heirs were contestants and her husband, W. H. Stovall, was contestee, it was mutually agreed in writing by the parties that a judgment be entered setting aside the will and that the husband be paid, in lieu of all his interest in his wife's estate, the sum of $1,725.00. Prior to that time a suit had been filed in the Monroe circuit court to settle the estate of Mrs. Stovall and to sell her land and divide the proceeds and

her personalty, after the payment of debts, among those entitled thereto. The land sold by the master commissioner, under a judgment rendered in that case, with interest on the bonds when collected, amounted to $3,476.75. There was in the hands of the personal representative, as shown by a settlement he made with the master commissioner, the sum of $1,231.88, with credits aggregating $939.59, leaving a balance in his hands for distribution of $291.28, but included in the assets so reported were items due from the husband for property he purchased at the administrator's sale aggregating $282.70, and which he agreed should be deducted from the compromise amount to be paid him of $1,725.00.

On April 8, 1919, the master commissioner paid to appellants, Oliver and Dixon, attorneys representing W. H. Stovall, the sum of $696.22, which she and they calculated was the balance of the amount due him, other claims having been paid to his creditors under orders of the court, and the record shows by the statements of the commissioner that the attorneys agreed at the time to refund any part of that check, if upon final settlement a mistake was discovered. Two days after issuing the check the commissioner discovered that she had paid the attorneys $507.70 more than was due their client under the compromise agreement, other payments for his benefit having been made prior thereto under orders of the court, which reduced the balance due him to $188.52.

On April 11, 1919, three days after the check was given, the personal representative of the decedent, who was plaintiff in the suit to settle her estate, entered motion for a rule against the attorneys and their client, W. H. Stovall, to show cause why they should not return the overpayment into court to be distributed in that suit. The rule was issued returnable to the next term of court, when the parties appeared and each of them filed a separate response, which the court adjudged insufficient and also, "that the respondents, T. B. Dixon, A. J. Oliver and W. H. Stovall, within sixty days pay into court the said sum of five hundred and seven and 70/100 ($507.70) dollars and the cost of this proceeding as to them." That order was not complied with and at the December, 1919, term of the court a special term was called for January 12, 1920, "for the purpose of making such orders herein as may be necessary relative to having said Oliver, Dixon, and Stovall pay said funds into this court." The record discloses that the special term was called in order that

the attorneys might have time within which to collect or secure from their client the amount of the overpayment which they had paid, partly to him and partly to a bank in settlement of his notes for which respondent Oliver was surety, and retained the balance of their fee.   Failing to either collect or secure the amount from him, the special term was held, and at the hearing then had evidence was heard, and it was adjudged that respondents were in contempt of court in failing to comply with its orders directing the return of the overpayment, and a warrant of arrest was ordered against each of them, but it was not to issue until executions, which were also directed, were returned "no property found;" and complaining of that judgment respondents, Oliver and Dixon, have appealed.

The only ground urged against the propriety of the judgment is that the court was without jurisdiction to proceed against appellants by rule or otherwise, because, as they contend, they were not parties to the litigation in which the rule issued, and that the overpayment by the master commissioner to them was not done by any order of court and was made before any judgment of distribution, and that it was therefore a mistake of the master commissioner against whom alone the court or any of the parties to the suit might proceed to collect the amount. In other words, it is contended that the master commissioner is primarily liable to the estate for the amount of the overpayment, and that if she was required to pay it only then could she proceed against appellants to recoup the amount from them if the facts authorized it.

We do not so understand the law.   In the case of Burdine v. White's Admrx., 173 Ky. 158, and on a second appeal of the same case, reported in 188 Ky. 10, we held that uncollected sale bonds taken by the master commissioner constituted a fund in the hands of the court which ordered the sale, and the property represented thereby was *in custodia legis,* and by analogy uncollected assets in the hands of the personal representative, after the filing of the settlement suit, clearly come within the some category.   Attorneys are officers of the court and should not be allowed without direction of the court to collect or appropriate, through mistake or otherwise, any part of the funds in the custody of the court for distribution any more so than a litigant in the suit, or the commissioner of the court, and if they should do so without an order of court directing it, we perceive no reason why they

should be immune from the summary proceeding by rule any more so than their client, the litigant, who, under the doctrine announced in the case of Rudd v. Rudd, 184 Ky. 400, and cases referred to therein, may be proceeded against in that manner. In that case an administrator *de son tort*, who was a party to the suit, was ordered to pay a sum in his hands which had been adjudged a part of the assets of the estate for distribution, and which, it was held, constituted a part of the fund in court for that purpose; and on his failure to do so a rule for contempt was issued against him which he defended on the ground that the court was without jurisdiction to proceed in that manner, but the court held otherwise, and on appeal the judgment was affirmed. The opinion, *inter alia*, says: "The general rule is, that where there is a judgment for money, or an order to pay money, the court will not grant the equity processes of attachment and commitment for contempt, except in cases where the court has jurisdiction over a fund, or the fund is the subject of a suit and is in the possession of a party subject to the control of the court. 10 R. C. L. 565-566. The appellant in the instant case, as heretofore shown as an executor *de son tort*, was a fiduciary; the court had jurisdiction over the fund in his hands, which is the subject of the suit, and over him, and in accordance with the foregoing principles, had authority to enforce its order by process of attachment and imprisonment for contempt, otherwise the court would be helpless." That it is contempt on the part of officers of the court to fail to comply with its orders requiring the payment of money is shown by the text in 13 Corpus Juris, 13, and that attorneys are officers of the court and come within the scope of that statement of the law is shown in the same volume, page 41. Many cases sustaining the text will be found in the notes.

It might be said in passing that respondents did not object to the rule, nor did they question the right of the court to issue it, by moving to quash or otherwise; but whether such failure was a waiver of the question or not, we need not determine, since we are convinced that the power of the court to enforce its order for the restitution of the money and to require respondents to return it, under the facts presented, clearly existed. The fact that the distributees might also proceed against the master commissioner and her sureties will not operate to defeat the remedy by rule against the attorneys to whom the money was wrongfully paid and who likewise wrongfully

collected it through mistake. Of course, no contempt proceedings can be inaugurated until a prior order of court directing the act to be done followed by a refusal, but in this case such an order was made and a compliance refused before any contempt proceedings were taken.

Nothing herein said is intended to impugn or reflect upon the motives of appellants, since they appear to have acted in good faith, but for the reasons given we perceive no error in the judgment and it is affirmed.