## Slusher v. Ward et al.

Oct. 25, 1940.

James M. Gilbert, Judge.

E. B. Wilson for appellant.

W. T. Davis and A. M. Edwards, Jr., for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

In the year 1938 one W. D. Scalf was the holder of a certificate of convenience and necessity issued by the Commissioner of Motor Transportation licensing him to opertae a bus line in Bell County. He had some sort of transaction concerning same with Dr. R. R. Evans, Scalf claiming that he pledged the certificate to Dr. Evans to secure a loan of $1,200 while Dr. Evans claimed that the certificate was sold to him. Scalf interested the appellees, Arthur Ward and James Howard, in attempting to secure a return of the certificate and they were to become associates of Scalf in the operation of the bus line if the certificate could be obtained from Dr. Evans. The appellees, in order to raise the money for Scalf to tender to Dr. Evans and secure a return of the certificate, signed Scalf's note for $1,300 as sureties at a bank and, to secure them against loss by reason of their suretyship, Scalf executed to them a mortgage on the certificate, this mortgage being drawn just as an ordinary land mortgage. When the money was advanced on the note by the bank it was put in the possession of Howard who, in company with Scalf, went to the home of Dr. Evans to make the tender and demand a return of the certificate. On arriving at the Evans home Howard turned the money over to Scalf who thereupon tendered it to Dr. Evans and demanded the certificate. Dr. Evans refused the tender and declined to surrender the certificate. Scalf and Howard thereupon returned to Pineville and finding the bank closed placed the $1,300 in an outside depository of the bank, this being done at the suggestion of one of the bank officials.

Several days later suit was filed by Scalf against Evans seeking a return of the certificate, and the $1,300 which had been re-deposited in the bank was again procured from the bank in the form of a cashier's check which was delivered to Ward, and this cashier's check was deposited with the Circuit Clerk as a tender to Dr. Evans of the amount which Scalf claimed he had borrowed on the certificate.

Scalf was indebted to the appellant, Axie Slusher, and she filed an action against him and secured an attachment on the $1,300 in the hands of the clerk. Motion was made to discharge this attachment but the motion was not passed on and an agreed order was entered stipulating that the fund in the hands of the clerk might be subjected to the payment of any judgment Axie Slusher might recover against Scalf, provided Scalf lost his suit against Evans, and that the attachment should be discharged in the event Mrs. Slusher should fail to obtain judgment against Scalf. The appellees were not parties to the action at that time nor did they concur in the agreement and, of course, could not be prejudiced or bound thereby.

In the action of Scalf against Evans, the court declined to order a return of the certificate to Scalf, holding that the transaction between Scalf and Evans was a purchase and sale and that the certificate was the property of Dr. Evans. No appeal was prosecuted from that judgment, but after its rendition appellees, Ward and Howard, who had then paid the $1,300 note to the bank, filed an intervening petition in the case of Axie Slusher against Scalf claiming the fund attached. In this intervening petition it was alleged that it was agreed between them and Scalf that should Evans be adjudged to be the owner of the certificate the money should be returned to the bank in payment of the note which they had signed as sureties.

The trial of the case of Axie Slusher against Scalf and the trial on the intervening petition proceeded at the same time before a jury. Mrs. Slusher obtained judgment against Scalf but the trial court was of the opinion that the question between the appellees and the appellant on the intervening petition was a matter to be tried by the court and took this matter from the consideration of the jury, rendering judgment in behalf of the appellees adjudging that the fund was not subject to the attachment and should be paid to appellees. This appeal is prosecuted from that judgment.

It is contended by appellant, first, that the trial court was in error in holding that the issue on the intervening petition was triable by the court and in this contention appellant is correct. Section 264 of the Civil Code of Practice provides that the trial of the attach-

ment shall be by the court, but this, of course, applies only to the trial of the grounds of attachment as between the parties. If an issue is raised between the attaching creditor and parties who intervene claiming the fund attached such issue is triable by a jury as any other ordinary action. We have concluded, however, that the trial court would have been justified in directing the jury to return a verdict in behalf of appellees and consequently his action in taking the case from the jury and rendering judgment himself accomplished the same purpose as a directed verdict and judgment entered pursuant thereto. Consequently this was a harmless and non prejudicial error.

There is no doubt that a fund in court is subject to attachment. Civil Code of Practice, Section 207; Burdine v. White et al., 173 Ky. 158, 190 S. W. 687. But it is conceded by the appellant that an attachment creditor acquires by his attachment no greater rights than the debtor had at the time of the attachment. However, it is earnestly insisted for appellant that the fund attached was owned by and belonged to Scalf, the attachment debtor, and that no right of intervention lay in the appellees because they had no claim to or interest in the fund. The whole matter to be decided therefore is whether or not the evidence was sufficient as a matter of law to establish the right of the appellees to the fund.

It is argued for appellant that the transaction between Scalf and appellees was an ordinary principal and surety transaction in which appellees were secured against loss by the mortgage on the certificate and that nothing but the ordinary relation of debtor and creditor existed between Scalf and appellees after they paid the note at the bank. If this were true, then, of course, appellees had no right to, or interest in, the fund such as would give them the right to intervene under Section 29 of the Civil Code of Practice, since the ordinary transaction between a principal and a surety, where the surety pays the note, creates merely the relationship of debtor and creditor with the creditor having no lien upon or claim to the proceeds of the note which he signed as surety. The evidence in the instant case however establishes a transaction quite different from the ordinary suretyship transaction. It is very apparent from the direct testimony of appellees and the banker who negotiated the transaction, as well as from circum-

stances revealed by this testimony, that the agreement between Scalf and the appellees was that they were signing as surety to procure the money to pay to Dr. Evans *only* if the certificate was returned to Scalf, and that in the event it was not returned the money should be returned to the bank to discharge the note which appellees had signed as surety. Appellees did not merely sign as surety and permit Scalf to obtain the proceeds of the note. On the trip to see Dr. Evans, one of the appellees accompanied Scalf and was in possession of the money and on the return to Pineville the money was immediately re-deposited in the bank. When the money was again taken from the bank in the form of the cashier's check, the check was taken possession of by the appellee, Ward, who made the deposit with the clerk himself. In short, the money was obtained for the special purpose of paying it to Evans if the certificate was returned to Scalf and of returning it to the bank to apply in payment of the note if the certificate was not returned. Thus, as between Scalf and the appellees, Scalf was under the obligation, and appellees had a right to see, that the money, when judgment was rendered in behalf of Evans, should be applied to the payment of the note. Having been compelled to pay this note themselves, appellees were entitled to this fund in satisfaction of this obligation. Appellant, as an attaching creditor, had no greater right than Scalf and the attachment of the fund by her could not serve to defeat the right of appellees to have it applied according to their agreement with Scalf.

We see little merit in appellant's argument that the only security or right obtained by appellees as sureties was by virtue of the mortgage on the certificate held by Evans. Both Scalf and the appellees necessarily realized that this was no security at all unless the certificase was returned by Evans to Scalf and by the judgment in the action of Scalf against Evans this return was denied. The appellees, after this judgment, had the right pursuant to the agreement between them and Scalf, to require the application of the proceeds of the note to the payment of the note or, having paid the note themselves, had the right to apply the proceeds in satisfaction of their claim against Scalf.

The only evidence heard was introduced by the appellees and it shows without contradiction the true

agreement between appellees and Scalf and, this being true, the trial court would have been justified in directing a verdict in behalf of appellees. His failure to do this and rendering judgment in behalf of appellees was not prejudicial to appellant.

Judgment affirmed.