**UNITED STATES v. CERTAIN PARCELS OF LAND SITUATE IN SAN BER-NARDINO COUNTY et al.**

**Civ. No. 5712.**

United States District Court
S. D. California, C. D.
Aug. 1, 1949.

990

James M. Carter, United States Attorney, Los Angeles, Cal., Joseph F. McPherson and Irl D. Brett, Special Assistants to Attorney General, and John P. Beebe, Special Attorney, Department of Justice, Lands Division, Los Angeles, Cal., for the United States.

Bodkin, Breslin & Luddy, and Peter E. Giannini, Los Angeles, Cal., for claimant, June Knapp.

Sharritt & Sharritt, and Charles E. Sharritt, of Los Angeles, Cal., for claimant Effa May Brannies, administratrix of estate of W. J. Wadhams, deceased.

J. F. T. O'CONNOR, District Judge.

Introductory Statement: The United States Government has filed a complaint in condemnation under the authority of the Act of Congress approved February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. 258a; the Acts of Congress approved June 17, 1902, 32 Stat. 388; August 30, 1935, 49 Stat. 1028; July 3, 1945, Public Law, 123, 79th Congress, 1st Session, 59 Stat. 318; and Acts amendatory thereof or supplementary thereto, seeking the condemnation of, and the fee simple title to, the following parcels of land:

Parcel 1-28-11

The Northwest Quarter of the Northwest Quarter (NW¼ NW¼ of Section Fourteen (14), Township Eight (8) North, Range Twenty-three (23) East, San Bernardino Base and Meridian, of the Public Survey, containing forty (40) acres, more or less, situate in San Bernardino County, California.

Parcel 1-28-41

All of Government Lot four (4) of Section Twenty-four (24), Township Eight

(8) North, Range Twenty-three (23) East, San Bernardino Base and Meridian, of the Public Survey, containing thirteen and forty-eight hundredths (13.48) Acres, more or less, situate in San Bernardino County, California.

being swamp and overflow lands situate in the channel of the Colorado River a short distance below the town of Needles, and some miles below Parker Dam, containing a total of 53.48 acres more or less (hereinafter sometimes referred to as the locus in quo), for use in connection with the Parker Dam Power Project; and, in accordance with the Declaration of Taking, pursuant to which a decree on the Declaration of Taking has been entered, there has been deposited into court by the United States Government the sum of $610 as probably being sufficient to satisfy the compensation to be paid to the owner thereof.

Eliminating those parties who have been defaulted, or who have filed disclaimers to the locus in quo, including H. E. Bennett and Lulu V. Bennett, his wife, there are only two claimants to this property, namely, June Knapp, who claims title thereto by a quitclaim deed from H. E. Bennett, dated November 12, 1930, and recorded October 19, 1935, in San Bernardino County; and the Estate of W. J. Wadhams, which claims title thereto by a grant deed from the said grantor, H. E. Bennett, et ux., to W. J. Wadhams, dated December 26, 1931, and recorded on November 15, 1934, in San Bernardino County; and the primary problem before the court in this proceeding is to determine who has the paramount title to the locus in quo between those two claimants, and entitled to be compensated therefor by the Government, in the condemnation thereof. So far as the record in this case is concerned, it does not appear that the State has, as yet, issued its grant or patent, pursuant to the Certificate of Purchase, to the party entitled thereto; and this decision does not adjudicate the right of any party to a grant or patent to the locus in quo from the State in the condemnation thereof by the Federal government.

June Knapp asks for a judgment for the condemnation of this property by the Government in the sum of $54,750, and the Administratrix of the Estate of W. J. Wadhams is asking for a judgment for the taking of this property by the Government in the sum of $5,000.

The decision in this case involves the interpretation to be placed upon certain statutes of the State of California, particularly of Sections 7722, 7723 and 7724 of the Public Resources Code, and of Sections 1107, 1214 and 1215 of the Civil Code (infra), so far as applicable to the facts in this case, and the ascertainment of whether or not W. J. Wadhams, at the time of the execution of the grant deed to him by H. E. Bennett, et ux., on December 26, 1931, was a purchaser in *good faith,* and gave a *valuable* consideration for the locus in quo, in accordance with the definitions of these terms under California law.

Under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the court is bound by the decisions of the highest courts of the State of California as rules of decision, as well as in the construction of the statutes of this State; and, under the doctrine laid down in City of Los Angeles v. Pomeroy, 124 Cal. 597, 57 P. 585; Hooker v. City of Los Angeles, 188 U.S. 314, 23 S.Ct. 395, 47 L.Ed. 487, 63 L.R.A. 471, this court has the jurisdiction in a condemnation proceeding to determine the ownership of real property as between adverse claimants thereto, regardless of diversity of citizenship.

Chronology of Events: Tracing the chronology of the important material events in this case, H. E. Bennett, of Los Angeles County, Calif., filed an Application to Purchase with the State Surveyor General, Sacramento, Calif., for the purchase of the locus in quo, being described as swamp and overflow lands, on April 9, 1930, which Application to Purchase was approved on June 21, 1930; and, pursuant thereto, a Certificate of Purchase, No. 1436, location No. 4203, dated Sacramento, August 18, 1930, was issued to H. E. Ben-

nett for Swamp and Overflow Land (Note[1], infra quod vide); (also reverse side thereof (Note[2] infra)), showing that on August 7, 1930, H. E. Bennett had paid to the State of California the sum of $12.78, being twenty per cent of the purchase money, and interest on the balance up to January 1, 1931, on the locus in quo; that the balance of the purchase money due was $44.57; and that the interest had been computed from June 21, 1930. There is a notation on this Certificate of Pur-

chase that interest is due and payable in advance on the first day of each year. See Sec. 3513 of the Political Code, approved April 5, 1917, St.1917, p. 64, as to Penalties and forfeitures. (Note: There is on record a letter dated August 6th, 1930, addressed to the County Treasurer, San Bernardino County, Calif., from and signed by H. E. Bennett, enclosing a cashier's check for $15.78 to cover first payment and Certificate of Purchase).

On the reverse side of this Certificate

Note [1].

2. See note 2 on page 995.

of Purchase (Note 2, supra) quod vide, appears the following assignment to June Knapp:

"Los Angeles, Calif.
"8/18th, 1930.

"For and in consideration of the sum of $10.00 Dollars and other good and valuable considerations, the receipt of which is hereby acknowledged I H. E. Bennett the owner of the within California Land Certificate of Purchase does hereby Grant, Sell, Assign, Deliver and Setover unto Mrs June Knapp all my rights and Ownership in this Land Purchase Certificate No. 1436—being

Note 2.

Los Angeles, Calif.
8/18th, 1930.

For and in consideration of the sum of $10.00 Dollars and other good and valuable considerations, the receipt of which is hereby acknowledged I H. E. Bennett the owner of the within California Land Certificate of Purchase does hereby Grant, Sell, Assign, Deliver and Setover unto Mrs June Knapp all my rights and Ownership in this Land Purchase Certificate No. 1436—being Location No. 4203, and to the San Bernardino County Lands described herein, subject to balances due thereon, and I hereby appoint her, as my atty in fact, to receive the Patent from the State of California when it is due for delivery to her as owner of the lands herein described and of the within Certificate of Land Purchase. And this Grant and assignment is to cover any and after acquired title that may be issued in my name.

Witness: Emmett Knapp H. E. Bennett Luke V Bennett

1931

RECEIVED from A. E. Bennett
Three 12/100 ......................................... Too DOLLARS,
being payment of one year's interest on the within described tract of land.
County Treasurer's Office, San Bernardino County, } Calif.
29th day of December, 19.30 }
............................ County Treasurer.
W. Hughes. Deputy

1932

RECEIVED from H. E. Bennett
Three 12/100 ......................................... Too DOLLARS,
being payment of one year's interest on the within described tract of land.
County Treasurer's Office, San Bernardino County, } Calif.
19th day of July, 19.32 }
............................ County Treasurer.
W. Hughes. Dep.

RECEIVED from H. E. Bennett
31/100 ......................................... Too DOLLARS,
being payment of 10% penalty interest on the within described tract of land.
County Treasurer's Office, San Bernardino County, } Calif.
19th day of July, 1932 }
............................ County Treasurer.
W. Hughes. Dep

RECEIVED from H. E. Bennett
Three 12/1 ......................................... Too DOLLARS,
being payment of year's interest on the within described tract of land.
County Treasurer's Office, San Bernardino County, } Calif.
30th day of November, 1934 }
............................ County Treasurer.
W. Hughes. Dep.

RECEIVED from W. J. Wadhams
$ Forty four and 57/100 DOLLARS,
being payment in full of principal and interest for the within described tract of land.
County Treasurer's Office, San Bernardino County, } Calif.
30th day of November, 19.34 }
............................ County Treasurer.
W. Hughes. Dep

PAID IN FULL OCT 1935.
BY JUNE KNAPP ( OWNER)
TREASURE. (Seal)
No. K. O. K :

Location No. 4203, and to the San Bernardino County Lands described herein, subject to balances due thereon, and I hereby appoint her, as my atty in fact, to receive the Patent from the State of California when it is due for delivery to her as owner of the lands herein described and of the within Certificate of Land Purchase. And this Grant and assignment is to cover any after acquired title that may be issued in my name.

"Witness: Emmat Knapp. H. E. Bennett,
"Lulu V. Bennett."

Thereafter, chronologically, H. E. Bennett executed to Mrs. June Knapp his quitclaim deed, dated November 12, 1930, recorded on October 19, 1935, in San Bernardino County, which recites a consideration therefor of $10 "and other valuable considerations dollars", wherein he released and quitclaimed to Mrs. June Knapp the locus in quo. This quitclaim deed was signed by H. E. Bennett and Lulu V. Bennett, his wife, and duly acknowledged before a Notary on November 13, 1930.

Thereafter, chronologically, the foregoing Certificate of Purchase (Note [1] supra) shows on the reverse side thereof (Note [2] supra) that there was received by the County Treasurer of San Bernardino County, on December 29, 1930, from H. E. Bennett, the sum of $3.12, being the payment of one year's interest on the locus in quo. (Note: There is on record a letter dated December 26, 1930, addressed to the County Treasurer, San Bernardino County, Calif., from and signed by H. E. Bennett, enclosing a money order for $3.12, covering one year's interest due in advance on January 1st, 1931).

Thereafter, chronologically, H. E. Bennett and Lulu V. Bennett, his wife, executed a grant deed to W. J. Wadhams, dated December 26, 1931, recorded on November 15, 1934, in San Bernardino County, of the aforesaid locus in quo, which grant deed recites a consideration of $10. This deed was acknowledged before a Notary Public on December 26, 1931. W. J. Wadhams died on December 11, 1941.

Thereafter, chronologically, the reverse side of the foregoing Certificate of Purchase (Note [2] supra) shows thereon that there was received by the County Treasurer of San Bernardino County on July 19, 1932, from H. E. Bennett, the sum of $3.12, being the payment of one year's interest on the locus in quo, and thirty one cents, being payment of ten per cent penalty. (Note: There is on record a letter dated June 27, 1932, addressed to the County Treasurer, San Bernardino County, Calif., from and signed by H. E. Bennett, enclosing a money order for $3.44, covering interest for the year 1932, of $3.12, and penalty of 32¢).

Thereafter, chronologically, the foregoing Certificate of Purchase, on the reverse side thereof (Note [2], supra), shows that there was received by the County Treasurer of San Bernardino County on November 30, 1934, from H. E. Bennett, the sum of $3.12, being the payment of one year's interest on the locus in quo.

Thereafter, chronologically, the foregoing Certificate of Purchase, on the reverse side thereof (Note [2], supra), shows that there was received by the County Treasurer of San Bernardino County, on November 30, 1934, from W. J. Wadhams, the sum of $44.57, being payment in full of principal and interest on the locus in quo.

There was also introduced into evidence three receipts showing that there had been received by the County Treasurer's Office of San Bernardino, on November 30, 1934, from W. J. Wadhams, three separate sums of money, for penalties and interest on the locus in quo.

There was also introduced into evidence a letter [3] written to Mr. M. W. H. Wil-

3. "Dear Sir:
"We are in receipt of your letter of August 14, enclosing report of the Treasurer of San Bernardino County of money received on account of State lands for the year ending with June 1935, in which you show on November 30, 1934 under location 4203 Swamp and Overflowed Lands of H. E. Bennett, the payment by W. J. Wadhams, of $44.57 principal, $6.24 interest and 93¢ penalties.

liams, Treasurer of San Bernardino County, San Bernardino, California, from the Division of State Lands, dated August 17, 1935, relative to the forfeiture of this land for non-payment of interest and penalties being set aside, and concerning the issuance of a patent therefor upon the surrender of the Certificate of Purchase.

*Assignment of the Certificate of Purchase to June Knapp by H. E. Bennett and Lulu V. Bennett:*

At the trial of this case, this Court was at a loss to understand why H. E. Bennett would continue to make payments on the Certificate of Purchase after his alleged Assignment and quitclaim deed to Mrs. June Knapp, and his grant deed to W. J. Wadhams, but Emmat W. Knapp, the husband of June Knapp, testified on April 26, 1948 (transcript pp. 13, 14, 45), that his wife had retained the Certificate of Purchase in her possession at all times after the Assignment of the Certificate of Purchase to her by H. E. Bennett, and had made the above payments, except the last one of $44.57, and that her name had been erased from the Certificate of Purchase by the County Treasurer's Office of San Bernardino as the receiptee, and the name of H. E. Bennett inserted thereover, because he was the owner of record of this Certificate; and H. E. Bennett testified (transcript p. 65) that he did not think he had made any payments to the State of California, or to the County of San Bernardino, after the assignment; and, (at page 77 of the transcript) he further testified that he had made no payments on the Knapp property at San Bernardino.

In view of the fact that a close examination of the reverse side of the Certificate of Purchase (Note [2], supra), and of the foregoing three receipts heretofore mentioned, showed that the name of Mrs. June Knapp had been erased therefrom and the name of H. E. Bennett superimposed thereon, this court was inclined to give credence to the testimony of Emmat Knapp and H. E. Bennett in this respect until June 7, 1948, when H. E. Bennett, upon being confronted with letters in his own handwriting of December 26, 1930, and June 27, 1932, supra, admitted that Mr. Knapp had given him the money for mailing as he (Bennett) understood the Certificate holder had to make the payments (transcript pp. 114-115).

It is decidedly problematical if this Assignment was made by H. E. Bennett to June Knapp on or about the date it bears. The court can give but little credence to the testimony of Emmat Knapp that his wife retained the Certificate of Purchase in her possession after the assignment, and to the testimony of H. E. Bennett that he never made any payments on account

"This is the first report this division has had of said payments as the last payment made under said location, as shown by the records of this division, prior to the receipt of the above mentioned report, was on July 1, 1932, when interest amounting to $3.12 and one penalty of 31¢ was reported by you.

"In view of the payment of the balance of the purchase price and interest and penalties as shown by your report, Certificate of Purchase No. 1436 issued August 18, 1930 to H. E. Bennett under said Location 4203, is restored to full force and effect, as provided by Chapter 832, Statutes of 1935, and the forfeiture on June 30, 1934, of the NW 40 acres of fractional NW¼ (or NW¼ of NW¼) of fractional Section 14, and Lot 4 of Fractional Section 24, T. 8. N., R. 23 E. and Lot 1 (or fractional NE¼ of NE¼) of fractional Section 1, T. 9 N., R. 22 E., S. B. M., described in said certificate of purchase, reported to the recorder of San Bernardino County by this division February 5, 1935, is hereby vacated, annulled and set aside.

"We are forwarding a copy of this letter to Mr. Ted. R. Carpenter, Recorder of San Bernardino County, and a copy to Mr. E. W. Knapp. We are also advising Mr. Knapp that said certificate of purchase should be forwarded to you in order that said payments of balance of purchase price and interest and penalties may be endorsed thereon and checked by the Auditor of said County, after which patent for said lands can be issued upon surrender of the Certificate of Purchase to this division, accompanied with Patent fees of $6.00.

"Thanking you for your letter and report, we are,

"Very truly yours,
"Division of State Lands,
"By A. P. Ireland."

of the amounts due thereunder after the assignment, when H. E. Bennett, upon being confronted with said letters in his own handwriting, had to admit that he had made the payments, with the qualification, however, that they had been made for Mrs. June Knapp because he was the registered owner.

■ Observationally, as stated by counsel for Mrs. June Knapp, it seems clear that under the express provisions of Secs. 7722 and 7723 of the Public Resources Code of California (see also Sec. 7724) (Notes [4], [5], and [6] infra), the Certificate of Purchase of swamp and overflow lands is prima facie evidence of title, or, probably more accurately, of the right to title (21 Cal.Jur. 710; C.C.P. § 1925; 21 Cal.Jur. p. 709, Packard v. Moss, 68 Cal. 123, 8 P. 818); but that all rights acquired under the Certificate of Purchase may be transferred by deed or by assignment; and it should be noted specifically, according to the plain and literal meaning of Sec. 7723, it is necessary for the assignment to be *executed and acknowledged before any officer authorized by law to take acknowledgments of conveyances of real property*, which this assignment was not. A search has been made of the California authorities for a construction of this code provision, and the only case that could be found is Albert v. Albert, 12 Cal.App. 268, 107 P. 156 (decided 1909), where this question was quaeried.

The ruling of this court on this particular point is that the assignment from H. E. Bennett and Lulu V. Bennett to June Knapp, dated August 18, 1930, assuming that it was a bona fide assignment otherwise, which this court has reason to doubt, was and is invalid and void ab initio, even between the parties inter se, as not complying with the provisions of this code section.

*The quitclaim deed to June Knapp from H. E. Bennett:*

■ The quitclaim deed to June Knapp, however, signed by H. E. Bennett and Lulu V. Bennett, dated November 12, 1930, and acknowledged before a Notary Public on November 13, 1930, in which H. E. Bennett, for and in consideration of $10 "and other valuable considerations dollars" remised, released and forever quitclaimed to Mrs. June Knapp the property in question, stands on a different footing from the assignment, for here the record is clear that it was duly notarized, and, there being no evidence in the record that it was not a bona fide conveyance, Mrs. June Knapp must be presumed to have taken the title in good faith.

To ascertain the status of a grantee under a quitclaim deed, and of such grantee being treated as a bona fide purchaser thereunder, see Moelle v. Sherwood, 1893, 148 U.S. 21, 28, 13 S.Ct. 426, 37 L.Ed. 350; indeed, in the instant case, the quitclaim deed to Mrs. June Knapp from H. E. Ben-

4. "§ 7722. Certificate of Purchase: Issuance and Contents: Evidence. Whenever an applicant for purchase of State lands has made the first payment, the commission shall issue to the person entitled thereto a certificate of purchase, showing the class of land purchased, the number of acres, the price per acre, the date of payment, the date from which interest is to be computed, the amount paid, and the amount remaining unpaid, which certificate is prima facie evidence of title. (Added by Stats.1943, ch. 609, § 1, p. 2207.)

"Based on former Pol. C. § 3516: amended by Code Amdts 1873–74, ch. 610, § 97, p. 52; Stats.1931, ch. 535, § 7, p. 1142; Stats.1867–68, ch. 415, § 4, p. 508, as amended by Stats.1871–72, ch. 457, § 1, p. 685."

5. "§ 7723. Sale of certificates and rights: Execution and acknowledgment of deed or assignment: Certificates of purchase, and all rights acquired thereunder, are subject to sale, by deed or assignment, executed and acknowledged before any officer authorized by law to take acknowledgments of conveyances of real property. (Added by Stat.1943, ch. 609, § 1, p. 2207.)

"Based on former Pol. C. § 3515; Stats.1867–68, ch. 415, § 69, p. 528."

6. "§ 7724. Report of sales by county recorder: Entry. All such sales shall, when the deed or assignment is recorded by the county recorder, be reported by him to the commission, to be entered in its books. (Added by Stats.1943, ch. 609, § 1, p. 2207.)

"Based on former Pol. C. § 3516; Stats.1867–68, ch. 415, § 69, p. 528."

nett would and did pass the after acquired title of H. E. Bennett to the locus in quo.[7] This court is satisfied that Mrs. June Knapp obtained all of the right, title and interest of H. E. Bennett in the property in question by his quitclaim deed to her. It is established that a quitclaim deed can convey good title as against a grant, bargain and sale deed, and that the former is just as effective to convey all the right, title and interest of the grantor as is the latter.[8]

*Burden of Proof was upon the Estate of W. J. Wadhams to prove purchase "in good faith" and for a "valuable consideration".*

Counsel supporting the contentions of W. J. Wadhams have predicated their theory of this case entirely upon Secs. 1107, 1214 and 1215 of the Civil Code of California, [9, 10 and 11] contending that W. J. Wadhams was an *innocent* purchaser for value and paid a *valuable* consideration for the locus in quo; and has, moreover, assumed that we are dealing with the legal title to the patent or grant, rather than with an equitable title to the certificate of purchase, but even on their theory the estate of Wadhams cannot prevail.

The crux of the problem before this court is whether or not W. J. Wadhams, under C. C. 1107 and 1214, supra, enacted in 1872, was a purchaser in *good faith* and for a *valuable* consideration, so as to give his grant deed from H. E. Bennett, executed subsequently to the quitclaim deed from the same grantor to June Knapp to the same property, but recorded prior thereto, priority; and it should be noted that in order to prevail he, W. J. Wadhams, must (1) have been a purchaser in good faith, i. e., have acted bona fide, and (2) *conjunctionally*, have paid a *valuable* consideration for the property, as the words, "good faith" and "valuable" are interpreted under these statutes; and, in the absence of either one or both of these prerequisites, he cannot prevail, and, furthermore, to prevail, the burden of proof is cast upon him, or, in this instance, upon his estate, in both instances.

Many, if not all, of the States of the United States have similar statutes to those of California protecting an innocent purchaser, i.e. one who acts in good faith, and pays a valuable consideration for his conveyance, and whose deed is first duly recorded, as against a previously executed but subsequently recorded deed; and, while the statutes of each state will be inter-

7. "While a quitclaim deed does not ordinarily pass an after-acquired title, yet when the holder of a certificate of purchase, on which twenty per cent has been paid, makes a quitclaim deed of his interest in the land, and subsequently obtains a patent, the title conveyed by the patent relates back to the inception of the proceedings, and in this way passes to the grantee in the quitclaim deed without any subsequent conveyance from the patentee." Wholey v. Cavanaugh, 88 Cal. 132, 25 P. 1112. See also Stanway v. Rubio, 51 Cal. 41.

8. Beach v. Faust, 2 Cal.2d 290, 40 P.2d 822; See also cases at 9 Cal.Jur.Deeds, Section 90, page 205, foot-note Nos. 17 & 18.

9. "§ 1107. Grant, how far conclusive on purchasers. Every grant of an estate in real property is conclusive against the grantor, also against everyone subsequently claiming under him, except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that is first duly recorded. (Enacted 1872.)"

10. "§ 1214. Unrecorded conveyance void as to subsequent purchaser or mortgagee. Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless such conveyance shall have been duly recorded prior to the record of notice of action. (Enacted 1872, Am.Stats.1895, p. 50.)"

11. "§ 1215. Conveyance defined. The term 'conveyance,' as used in sections twelve hundred and thirteen and twelve hundred and fourteen, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title to any real property may be affected, except wills. (Enacted 1872.)"

1000

preted by the state courts according to the particular .phraseology and requirements of the state statutes in question, all of these statutes relate back to the Statute of 7 Anne, c. 20 (1708), the English statute of registration (cases on Property, Gray, Vol. VI, 2nd Ed. p. 270; and, for an interesting case dealing with what constitutes an innocent purchaser for value without notice, see Williamson v. Brown, Court of Appeals of New York, 1857, 15 N.Y. 354 [12].

An unrecorded deed is good as against every one excepting a· subsequent purchaser, or mortgagee, of the same property in *good faith* and for a *valuable* consideration, whose conveyance is first duly recorded (Civil Code, Sec. 1214; Holman v. Toten, 54 Cal.App.2d 309, 315, 128 P.2d 808; March v. Pantaleo, 4 Cal.2d 242, 48 P.2d 29.

In California, the law is that in order for a purchaser to take precedence over a previously unrecorded deed, he must prove: (1) that he took without notice, actual or constructive, of the unrecorded deed, and (2) that he paid a *valuable* consideration therefor; and the burden of proof is cast upon him to prove these facts.

In James v. James, 80 Cal.App. 185, 251 P. 666, 669, (decided in 1926) the court stated, relative to the burden of proof being on the grantee, who claims over a previously unrecorded deed, to prove good faith and a valuable consideration.

"The defendant in this case, basing his claim upon a deed executed and recorded subsequent to the execution and delivery of an unrecorded deed, takes upon himself the burden of showing that the deed accepted by him was received without *actual* knowledge of the prior unrecorded deed, and also, that he has, in fact, parted with a valuable consideration as the purchase price of the property. In Black Eagle Oil Co. v. Belcher, 22 Cal.App. 258, 133 P. 1153, the law in this particular is set forth in the opinion as follows:

" ' "To entitle a party to protection as such purchaser, he must prove the payment of the purchase money in good faith and without notice, actual or constructive, prior to and down to the time of its payment, for if he had notice at any moment of time before the payment of the money, he is not a bona fide purchaser." Boone v. Chiles, 10 Pet. (U.S.) [177], 210, 9 L.Ed. 388; Scott v. Umbarger, 41 Cal. [410], 419; Eversdon v. Mayhew, 65 Cal. 163, 3 P. 641. Nor can the recitals contained in the deed as to the consideration paid be accepted as prima facie proof of such payment. "Such recitals are but the declarations of the grantor." '

"The respondent relies upon and the court apparently accepted as sufficient the recital in the instrument executed and delivered by Thomas F. James to the defendant, Howard T. James, purporting to convey the property described in the complaint, wherein it is stated that the said Thomas F. James for a consideration of $10, 'to him in hand paid, the receipt whereof is hereby acknowledged, does hereby grant to Howard T. James' all right, title, and interest of the grantor in and to the premises in controversy. The insufficiency of such testimony to establish consideration is explicitly held in the case of Long v. Dollarhide, 24 Cal. 218. There the court said, where reliance was had upon the recitals in a deed to establish consideration:

" 'The burden of proving this rested upon him (grantee), and the recitals in the deed are *not*, as he contends, prima facie proof of a valuable consideration. Such recitals are but the declarations of the grantor, and it has never been held that the declarations of a vendor or assignor, made after the sale or assignment, can be received to defeat the title of the vendee or assignee. A party seeking to bring himself within the statute cannot rely upon the recitals of his deed, but must prove the payment of the purchase money aliunde.'

"In 9 California Jurisprudence, Sec. 45, p. 145, we find the following: " 'Where the payment of a valuable con-

12. Adams v. Cuddy, 13 Pick. 460, 25 Am. Dec. 330 (Supreme Judicial Court of Mass.1833); Blades v. Blades, 1 Eq.Cas. Ab. 358, Pl. 12, decided 1727.

sideration becomes a material question, the recital in a deed of a valuable consideration paid by the grantee is only evidence of such payment as against the grantor, or against those claiming under the grantor by a subsequent conveyance; but it is evidence of the payment of a valuable consideration only as against those claiming under the grantor by conveyance subsequent to the same. It is, therefore, not evidence as against strangers, nor as against the owner of a prior equity, nor as against one claiming under a prior deed from the same grantor. * * * One claiming as a bona fide purchaser for a valuable consideration under a second deed, but recorded first in point of time, must affirmatively prove the payment by other evidence than the deed itself.'

■ "In Kenniff v. Caulfield, 140 Cal. [34], 45, 73 P. 803, the Supreme Court had before it the same question, and states the rule of law as follows:

" 'In order to defeat the claim of plaintiff under the prior deed, it was incumbent upon the defendant to prove, that he was a bona fide purchaser of the premises in dispute; that he had paid a valuable consideration therefor, and without notice of plaintiff's claim. The burden in that respect was upon him. To entitle a party to protection as such a purchaser, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, *actual* or *constructive*, prior to and down to the time of its payment, for, if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a bona fide purchaser (citing cases).' " (Italics supplied.)

A purchaser fails to sustain the burden of proof that he took his conveyance in good faith and without constructive knowledge of the interest of beneficiaries of a trust, where there were present circumstances putting him on inquiry, and neither he nor his grantor took the witness stand to testify on the subject. Rabbit v. Atkinson, 44 Cal.App.2d 752, 113 P.2d 14.

In a suit to try the title to land between two who are purchasers from the same grantor, where the oldest deed is neither acknowledged nor recorded, the one claiming under the prior unacknowledged and unrecorded deed will prevail unless the fact appears that the second purchaser bought without notice for a valuable consideration. Landers v. Bolton, 26 Cal. 393; Bell v. Pleasant, 145 Cal. 410, 413, 78 P. 957, 104 Am.St.Rep. 61; Hall v. Chamberlain, 31 Cal.2d 673, 676, 192 P.2d 759.

■ In the case of the President and Presiding Elder, etc., v. Goodwin, 119 Cal. App. 37, 39, 5 P.2d 973, 974, it is indicated that there is no presumption of consideration. The Court said: "That a written instrument presumes a consideration is ordinarily the rule. But, when the evidence shows that one has executed a valid deed to real estate, it follows that the grantor has exhausted his rights. And, when the same record shows that such grantor attempts to execute another grant to that same real estate, it follows that the grant carries nothing. Such second grant, therefore, carries with it, in the face of such facts, no presumption of a consideration." Bell v. Pleasant, 145 Cal. 410, 78 P. 957, 104 Am. St.Rep. 61. See also, Hall v. Chamberlain, 31 Cal.2d 673, 676, 192 P.2d 759; March v. Pantaleo, 4 Cal.2d 242, 243, 48 P.2d 29; McLane v. Storr, 75 Cal.App.2d 459, 464, 171 P.2d 534; Oswald v. Northrop Aircraft, Inc., 62 Cal.App.2d 824, 829, 145 P.2d 635; Rabbit v. Atkinson, 44 Cal.App.2d 752, 757, 113 P.2d 14; Pellissier v. Title Guarantee & Trust Company, 208 Cal. 172, 184, 280 P. 947; Olson v. Cornwell, 134 Cal. App. 419, 428, 25 P.2d 879; President and Presiding Elder, etc., v. Goodwin, 119 Cal.App. 37, 39, 5 P.2d 973; James v. James, 80 Cal.App. 185, 195, 251 P. 666; Chapman v. Ostegard, 73 Cal.App. 539, 544–545, 238 P. 1081; Slaker v. McCormick-Saeltzer Co., 179 Cal. 387, 388, 177 P. 155; Kress v. Tooker-Jordan Corp., 103 Cal.App. 275, 282, 284 P. 685; Black Eagle Oil Co. v. Belcher, 22 Cal.App. 258, 262, 133 P. 1153; Lindley v. Blumberg, 7 Cal.App. 140, 93 P. 894.

1002

*Status of W. J. Wadhams as a purchaser in good faith under Sec. 1107 and Sec. 1214 of the Civil Code of California.*

 In deciding the question as to whether or not W. J. Wadhams was a purchaser in good faith under Secs. 1107 and 1214 of the Civil Code of California, supra, when he acquired his grant deed from H. E. Bennett on December 26, 1931 (and the question of his paying a valuable consideration for the locus in quo will be considered in due course), it should be understood that this court is not deciding what does and does not constitute *constructive* notice under the recording statutes of this state, for this court does not believe for one moment that the record of this certificate of purchase in Sacramento would constitute *con-* *structive* notice thereof to a purchaser, otherwise acting in good faith, purchasing this property from a person having the apparent legal title of record in San Bernardino County; and neither would the record of tax payments made in San Bernardino by another person, probably impart *constructive* notice to a person purchasing the property in good faith from the apparent legal owner of record in San Bernardino County that he was not the owner, but this court is construing exclusively what constitutes *actual* notice under Secs. 1107 and 1214 of the C.C.[13]

 "Whether a party has notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and whether by prosecuting such inquiry he

13. A search of the authorities for a definition of "notice" in this type of a case reveals that this word, with its adjectives "actual", "constructive", "implied", and "presumptive", has not, in all of its ramifications, acquired a standardized meaning in the legal nomenclature; and, as used in this Opinion, the phrase "actual notice" means that which a party knows of his own personal knowledge, or, by the exercise of reasonable diligence, would give him that knowledge or notice (although this latter phrase sometimes means implied notice); and *"constructive notice"* means that notice imparted by the recording statutes.

In Burdine v. White, 173 Ky. 158, 190 S.W. 687, 689; it is said that notice is actual, constructive, implied and presumptive, while actual notice is susceptible of subdivisions such as information which of itself gives actual notification and that which, if prosecuted with ordinary diligence, would furnish information of the fact.

Notice is actual or constructive. Actual notice is that which consists in express information of a fact, and constructive notice is that which is implied by law. Prouty v. Davin, 118 Cal. 258, 50 P. 380, 381.

If a reasonably prudent man is put upon inquiry he can be charged with actual notice. Hawke v. California Realty & Construction Co., 28 Cal.App. 377, 152 P. 959.

Whatever is sufficient to direct attention of a purchaser or encumbrancer to prior rights or equities of third persons and to enable him to ascertain them by inquiry, will operate as notice. Olson v. Cornwell, 134 Cal.App. 419, 25 P.2d 879.

In order that one may occupy the position of a bona fide purchaser of land, he must not only pay a valuable consideration therefor, but he must also buy and pay the purchase price without actual knowledge or means of acquiring it, which is the equivalent of knowledge, and without notice, actual or constructive, of the rights, liens or equities of third persons. (Cal.Jur. Vol. 25, p. 829 and cases cited).

As the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts. Lady Washington Construction Co. v. Wood, 113 Cal. 482, 487, 45 P. 809, 810; Reusche v. Berling, 87 Cal.App. 559, 262 P. 392 (see also Bancroft v. Woodward, 183 Cal. 99, 108, 190 P. 445; Montgomery v. Keppel, 75 C. 128; Shain v. Sresovich, 104 Cal. 402, 38 P. 51.

A prospective purchaser who knows of an outstanding lien on the property, although the lessee is not in possession (by way of analogy, Wadhams' knowing of the certificate of purchase) is chargeable with notice of all that a reasonably diligent inquiry as to the rights and claims of the lessee (in the case at bar: June Knapp) might after disclose. Basch v. Tidewater Associated Oil Co., 1942, 49 Cal.App.2d Supp. 743, 121 P.2d 545, on hearing after 48 A.C.A.Supp. 997, 117 P. 2d 956.

might have learned of such fact, are questions of fact to be determined by the jury or by the trial court. Northwestern Portland Cement Co. v. Atlantic Portland Cement Co., 174 Cal. 308, 163 P. 47.

This land is swamp and overflow land, and, ex vi termini, is not suitable for cultivation; and, as a consequence, no one was living thereon at the time so as to give *actual* notice as to ownership merely by an inspection of the land itself.

H. E. Bennett testified, of his own personal knowledge, that for a number of years prior to the time that he and his wife gave this grant deed to W. J. Wadhams he (W. J. Wadhams) had been active in the matter of searching the records in the Lands Office at Sacramento for lands that were open to entry and then arranging for the location of those properties, and that on every piece of land for which he, (H. E. Bennett), had applied for the purchase—he (W. J. Wadhams) had located the land, told him where it was, had given him the "legals" on it, and had gone with him to look at a great many of them (transcript pp. 116–117).

As to the conversation that took place between H. E. Bennett and W. J. Wadhams at the time that H. E. Bennett and his wife

gave the grant deed to W. J. Wadhams, H. E. Bennett testified as follows:

"* * * Mr. Wadhams came to me, with the original of this deed made out and says, 'I want you to sign this deed to me'.

"I says, 'I can't do it because I have deeded it to Mrs. Knapp' or to the Knapps, Mr. and Mrs. Knapp. "And he says, 'Well, I have dealt them out of the property and all I want this deed for is to clear my title.'

"I says, 'Where is the certificate?'

"He says, 'I will get that when I show Knapp that I have got your deed that clears it up.'" From transcript of testimony, p. 71.

 Further, upon being asked by counsel for June Knapp if he, H. E. Bennett, had received in any way, shape or form any consideration whatsoever for the execution of that deed to W. J. Wadhams, he, H. E. Bennett, testified:

"Not a penny." (From transcript pp. 71 and 72) [14]

It is clear to the court that W. J. Wadhams was thoroughly familiar with these certificates of purchase, their importance, the procedure for the duplication of lost or destroyed copies; [15] and their assignments.[16]

 Assuming that H. E. Bennett's

14. The dead man's rule (California C.C.P. Sec. 1880, subdivision 3) does not apply excepting in an action against the estate of a deceased person upon a claim against that estate. It does not apply to an action against the estate of a deceased agent to establish the fact that a deed of land to the agent was obtained by the grantee's fraud and therefore never become a part of his estate (Calmon v. Sarraille, 142 Cal. 638, 642, 76 P. 486). (see sec. 1214, C.C.)

The statute does not preclude a plaintiff from testifying in an action to enforce a trust in real estate against the executor or administrator of a deceased person. (Bollinger v. Wright, 143 Cal. 292, 296, 76 P. 1108.)

It is well established that parol evidence is admissible for the purpose of contradicting or showing that the true consideration of a deed is other and different from that expressed in it (9 Cal. Jur. p. 147; Unger v. Hall, 61 Cal.App.2d 535, 143 P.2d 497; Smick Co. v. Muller, 201 Cal. 219, 256 P. 411) (see Wigmore

on Evidence, Sec. 2065 and sections there referred to especially footnote 6; Rule 503 Model Code of Evidence, Vol. 31, Corpus Juris Secundum, Evidence, § 266 et seq.; Mattingly v. Pennie, 105 Cal. 514, 39 P. 200, 45 Am.St.Rep. 87; Austin v. Wilcoxson, 149 Cal. 24, 84 P. 417; In re Estate of Emerson, 175 Cal. 724, 167 P. 149 and Smellie v. Southern Pac. Co., 212 Cal. 540, 299 P. 529.

15. Sec. 7726, Public Resources Code: If the owner of a certificate of purchase claims that it has been lost, destroyed, or is beyond his control, the commission shall take testimony concerning the loss, destruction, or reason why the certificate of purchase is beyond his control. The owner shall, before the hearing make an affidavit that he has not sold the certificate of purchase, or the land described therein, and shall publish a notice in some newspaper in the county where the land is situated, or if there is no newspaper published in the county, then in some

16. See note 16 on page 1004.

testimony concerning the conversation that took place with W. J. Wadhams as to the reason for Wadhams' obtaining the grant deed from him, (Bennett) is not correct (and, while such testimony was admissible under the dead man's rule—Note 14 supra— the decision in this case wholly disregards the testimony of H. E. Bennett in this instance for the reason that the burden of proof, so far as proving good faith and consideration for the deed to Wadhams is concerned, rested solely upon the estate of W. J. Wadhams, and was wholly lacking because of his decease at the time of trial through no fault of June Knapp), W. J. Wadhams, in obtaining his grant deed from Bennett, did, as a matter of law, obtain but a mere equity in the locus in quo, (hereinafter to be explained), and stood in no better position than his grantor Bennett; and, furthermore, knowing that he was not obtaining any evidence of title from a title insurance company, or a warranty deed from Bennett, he, Wadhams, if he had been acting in good faith, and as a reasonably prudent man with his experience would have acted, would have, in the court's opinion, asked for the assignment of the Certificate of Purchase to him, knowing that the procure-

ment thereof would be necessary to perfect his title from the state when the conditions of the Certificate of Purchase had been complied with. If this procedure had been followed, he (W. J. Wadhams) would have seen the assignment on the Certificate of Purchase to June Knapp (assuming the assignment was then on the Certificate); and, if the Certificate was not forthcoming, he would have been put upon further inquiry, and under the necessity of obtaining a duplicate certificate under Sec. 7726 of the Public Resources Code, at which time H. E. Bennett would have had to explain to the Commission what had happened to his Certificate; and in all probability the existence of the quitclaim deed from Bennett to June Knapp would have come to light. This lack of caution, it seems to the court, would be sufficient to charge W. J. Wadhams with *actual* notice of the defect in H. E. Bennett's Certificate of Purchase, which he certainly knew Bennett had originally.

■ "A bona fide purchaser has been defined as one who can prove the possession of his grantor, the purchase of the property, and the payment of the purchase money in good . faith and without notice, actual or constructive." Kress v. Tooker-

newspaper of general circulation in the county, for at least four weeks, describing the certificate and the lands for which it was issued, stating the name of the person to whom it was issued and the person then claiming to own it, together with the time and place of hearing. (Added by Stats.1943, ch. 609, Sec. 1, p. 2207.)

Based on former Pol. C. Sec. 3518, as amended by Code Admts 1873–74, ch. 610, Sec. 98, p. 53, Stats.1909, ch. 339, Sec. 1, p. 563; Stats.1867–68, ch. 415, Sec. 61, p. 525, Anno. See 16 Cal.Jur. 689; 34 Am.Jur. 5.

16. Sec. 7756, Public Resources Code: Immediately following the thirtieth day of June of each year, the commission shall note upon its records all forfeitures under this article, and shall forward to the recorder of each county wherein any of the lands are situate, a notice of such forfeiture. The notice shall state the name and post office address of the purchaser and the name and post office address of the assignee,

grantee, or successor in interest of such purchaser in all cases *wherein notice of any assignment of the certificate of purchase, or of any conveyance or other transfer of title to any part of the* lands therein described has been filed with the commission prior to the date of the forfeiture. The notice shall also show the number and date of the survey or location of the certificate of purchase, and shall contain a description of the lands affected thereby. The recorder shall receive and file the notice and shall record it in the proper book. The notice is, from the time it is filed in the recorder's office, constructive notice of the contents thereof to subsequent purchaser and mortgagees and to all other persons who may thereafter attempt to acquire any interest in, or lien upon, any of the lands described in the notice. (Added by Stats.1943, ch. 609, Sec. 1, p. 2209.)

Based on former Pol. C. Sec. 3513, as amended by Stats.1911, ch. 722, Sec. 1, p. 1410; Stats.1917, Ch. 60, Sec. 1, p. 64; Stats.1931, ch. 535, Sec. 6, p. 1141.

Jordan Corp., 103 Cal.App. 275, 282, 284 P. 685, 689; Eversdon v. Mayhew, 65 Cal. 163, 3 P. 641; James v. James, 80 Cal.App. 185, 251 P. 666. See also Hawley v. Diller, 178 U.S. 476, 20 S.Ct. 986, 44 L.Ed. 1157, as to what constitutes a bona fide purchaser for value.

A subsequent purchaser will take title to property free and clear of any interest of a prior purchaser, in the absence of actual notice of such prior contract or of circumstances sufficient to put him on inquiry as to the state of the title. Mayhew v. Melby, 206 Cal. 396, 274 P. 517.

One cannot claim protection as an innocent purchaser, for want of record of a prior deed, where it appears that he had knowledge thereof. Clarke v. Clarke, 133 Cal. 667, 66 P. 10.

While it is true that priority of recording under our recording system is of great importance, and absolutely necessary, for the stability of land titles, and to afford protection to a purchaser or encumbrancer in good faith, and for a valuable consideration, nevertheless, if the Legislature had desired to make prior recordation paramount in every instance, without regard to the party's first recording his instrument being a purchaser or encumbrancer in good faith and for a valuable consideration, it could and would have said so.

It is obvious to this court that the Legislature of this state, in enacting Sections 1107 and 1214 of the California Civil Code in 1872, by its very phraseology, never intended that a person with *actual* notice, or in possession of facts which would lead a reasonably prudent person to obtain actual notice, of an unrecorded instrument, under the particular facts and circumstances peculiar to each case, should obtain a better title merely by a prior recordation of his instrument, which merely gives *constructive notice,* and is not paramount to *actual notice.* The only time when recordation protects a grantee, or an encumbrancer under Sec. 1107 and 1214 of the Civil Code as against an unrecorded instrument executed prior to said recordation is when he is a purchaser or encumbrancer in *good*

*faith* and for a *valuable* consideration, as these words are understood in the law, and these are questions of fact depending upon the particular circumstances in each case; and, furthermore, the burden of proof is upon him (the Estate of W. J. Wadhams in this instance) to prove these facts aliunde the deed itself.

This court has not discussed in the least what does or does not constitute *constructive* notice under the recording statutes, but exclusively *actual* notice, the court considering *actual* notice to be that which a person knows of his own knowledge, or, by the exercise of reasonable diligence from facts already in his possession, would lead to *actual* knowledge. These, of course, are questions of fact dependent upon the particular circumstances of the parties in each case.

Under the law as expounded in the James case, supra, the grantee of a deed recorded prior to that of a previously executed deed by the same grantor has the burden of proving *good faith* and the payment of a *valuable* consideration by evidence aliunde the deed itself. Unfortunately, W. J. Wadhams is now deceased, and his Estate was unable to support this burden of proof, through no fault of June Knapp. This court does not believe that W. J. Wadhams ever paid any consideration whatsoever to H. E. Bennett for his deed, and, there is not a scintilla of evidence in the record to show that W. J. Wadhams had paid any consideration for the deed, aliunde the deed itself; and neither was there any affirmative evidence in the record to show that he had acted in good faith. These two defects in the matter of proof are fatal to the recovery in this case by the Estate of W. J. Wadhams.

*The status of W. J. Wadhams as paying a valuable consideration for his deed:*

Even though W. J. Wadhams had been a bona fide purchaser, i. e., a purchaser in *good faith* under Sections 1107 and 1214 of the Civil Code of California, so as to entitle his recorded deed to precedence and priority over the previously executed but unrecorded deed (at that time) of June Knapp, and his Estate had been able to

1006

prove this fact, his Estate still could not prevail under the same statutes for the reason that his Estate has not proved by evidence, aliunde the deed itself, the *valuable* consideration for the deed, which is a corollary to his being a purchaser in good faith, bearing in mind that on the authority of the James case supra, the burden of proof is also upon his Estate to do so; and the contention of counsel in his behalf that the sum of $51.74, paid by W. J. Wadhams on November 30, 1934, approximately three years after the deed from Bennett to Wadhams of December 26, 1931, to the County Treasurer of San Bernardino County for principal, interest and penalties on the Certificate of Purchase, constituted a consideration for the deed from Bennett to Wadhams is absurd.

■■■■■ "Under established principles of law, all payments made on the certificate of purchase, until it was paid in full, accrued to the benefit of the owner of the rights in and to that certificate, whoever that owner happened to be. Any other person making payment of any or all sums on that certificate under the mistaken belief that the person so making the payments was the owner of the property, was a mere volunteer and the payment accrued to the benefit of the actual owner of the property. In the language of McMillan v. O'Brien

219 Cal. 775, at page 779, 29 P.2d 183, at page 184, 91 A.L.R. 383: 'It is the general rule that there can be no recovery for a voluntary payment of the debt of a third party without request and with no promise of repayment by the party whose debt is paid * * *.'

"It was held in the McMillan case that one paying taxes under a mistaken belief of his ownership of property is a volunteer and not only acquires no right in and to the property upon which taxes are so paid by such payment, but is not entitled to recover the amount of the payments from the actual owner of the property."

■■■■■ This court knows as a matter of common knowledge, if not strictly as a matter of judicial knowledge, that, in Southern California, it is customary to insert the sum of $10 in deeds as the consideration, so as to keep the actual consideration off the recording records for personal and business reasons, and that the sum of $10 literally very seldom, if ever, changes hands. However, assuming that the $10 named in the deed was the *actual* consideration, and had been proved by Wadham's estate, aliunde the deed itself, Wadham's estate would still be unable to recover in this case for the reason that $10 is not a valuable, as distinguished from a *good,* consideration.[17]

17. Cases dealing with definition of valuable consideration.

Words "valuable consideration" required of purchaser to defeat unrecorded conveyance are used in contradistinction from valid or sufficient consideration between vendor and purchaser. Ochenkowsky v. Dunaj, 137 Misc. 674, 244 N.Y.S. 267, 270.

Ky.St. Sec. 1906, relating to fraudulent conveyances, protects a bona fide purchaser for value, and the valuable consideration as contemplated by statute means a fair equivalent of thing bought, and, in order to defeat purchase, it is necessary to prove knowledge on part of purchaser, which knowledge, however, may be implied from circumstances. Farmers' & Merchants' Bank v. Blue, 233 Ky. 583, 26 S.W.2d 493.

Consideration of $1 recited in deed conveying land even if paid, would constitute a "nominal consideration" as distinct from a "valuable consideration."

Edwards v. Myers, 127 Kan. 221, 273 P. 468, 470.

One dollar is not such "valuable consideration" for a deed as gives to a subsequent purchaser priority over a senior deed though priority of record. Dunn v. Dunn, 151 App.Div. 800, 136 N.Y.S. 282, 284.

The term "valuable consideration," as applied to the consideration expressed in a deed, differs in its meaning from the term as used in the recording act of New York with reference to purchasers for a valuable consideration, and as used by the courts of equity. In the latter cases it means substantial value; and a nominal sum, though actually paid, or an antecedent debt or a promise on the part of the grantee from which he can be relieved, do not constitute valuable considerations. Turner v. Howard, 10 App. Div. 555, 42 N.Y.S. 335, 338.

A "valuable consideration" as used in Ky.St.Sec. 1907, in relation to fraudu-

As regards bona fide purchasers, a mere nominal consideration does not satisfy the requirement that a *valuable* consideration must be paid. In Beach v. Faust, 2 Cal.2d 290, 40 P.2d 822, 823, the court said: "The recording laws were not enacted to protect those whose ignorance of the title is deliberate and intentional, nor does a mere nominal consideration satisfy the requirement that a valuable consideration must be paid. Their purpose is to protect those who honestly believe they are acquiring a good title, and who invest some substantial sum in reliance on that belief."

*The status of a Certificate of Purchase:*

All counsel in this case have acted upon the erroneous assumption that H. E. Bennett, at the time he gave his alleged assignment of the Certificate of Purchase on August 18, 1930, and the quitclaim deed on November 12, 1930, to June Knapp, and his grant deed to W. J. Wadhams on December 26, 1931, had legal title to the grant or patent covering the locus in quo, whereas, all that he transferred, or could have transferred, was the Certificate of Purchase, or an equitable interest in the patent to be subsequently issued when the terms of the Certificate of Purchase had been complied with; and, while this court has heretofore pointed out why, even on the assumption that the legal title to the locus in quo was involved, the Estate of W. J. Wadhams could not recover in this proceeding; a fortiori, the position of the Estate

of W. J. Wadhams is that much weaker because Wadhams was dealing with an equitable interest only, where, under the Certificate of Purchase, he, (Wadhams) had no greater rights than those of his Grantor, H. E. Bennett; he could not be a bona fide purchaser for value, i. e., take free of the equities afflicting his grantor, Bennett, but he stands in the shoes of his grantor, H. E. Bennett; and, as Bennett had previously parted with all his right, title, and interest to the locus in quo by his quitclaim deed to Mrs. June Knapp and his (Bennett's) rights to the patent to be eventually issued, then, by simple reasoning, the grant deed to Wadhams conveyed nothing because Bennett in the meantime had parted with his right, title and interest in the locus in quo to Mrs. June Knapp.

A Certificate of Purchase vests an equitable title in the purchaser, Russ & Sons Co. v. Crichton, 117 Cal. 695, 49 P. 1043, but does not transfer the legal title, Gibson v. Robinson, 68 Cal. 539, 10 P. 193; Manly v. Howlett, 55 Cal. 94; Kerr v. Snowden, 24 Cal.App. 152, 140 P. 704. The holder of a certificate of purchase who has paid only a portion of the purchase price, is not the owner of the land, having merely a contract to purchase. Directors of Fallbrook Irrigation Dist v. Abila, 106 Cal. 365, 39 P. 793.

Title does not pass from the state until full payment of principal and in-

lent conveyances, requires that the consideration should be valuable, and a consideration not much, if any, in excess of 50 per cent of the goods sold, is so inadequate as to cause surprise or warrant a suspicion of fraud or contrivance on the part of the purchaser. Carter v. Richardson, Ky., 60 S.W. 397, 399, 22 Ky.Law Rep. 1204.

Recited consideration of $1 in quitclaim deeds conveying husband's land to husband and wife as tenants by entireties was a "nominal" and not "valuable" consideration. Allaben v. Shelbourne, Mo. Sup., 212 S.W.2d 719, 723.

The sum of $1 was a valid but merely nominal consideration for quitclaim deed and not such a "valuable consideration" as would entitle grantee therein to the benefit of registry statute as a subsequent purchaser for valuable considera-

tion as against unrecorded prior conveyance of oil and other minerals to another for a valuable consideration. Smith County Oil Co. v. Jefcoat, 203 Miss. 404, 33 So.2d 629, 632.

"Valuable consideration" necessary to give a recorded deed priority over a prior unrecorded deed, means an approximately adequate consideration. Riley v. Robinson, 128 App.Div. 178, 112 N.Y.S. 753, 754.

In considering amount of consideration in a deed and in determining whether it is a "valuable consideration", the value or amount of property or money that may pass from the grantee to others as well as to the grantor by reason of the transaction must be considered. Walker v. Ellis, 212 Ark. 498, 207 S.W.2d 39, 41."

1008

terest has been made by the person to whom the certificate was issued or his assignee. Wasley v. Foreman, 38 Cal. 90; Yoakum v. Brower, 52 Cal. 373; Pioneer Land Co. v. Maddux, 109 Cal. 633, 42 P. 295, 50 Am.St.Rep. 67.

 "Certificates of Purchase and rights acquired thereunder may be sold. A certificate of purchase is assignable, but not negotiable. The assignment may not be delivered *conditionally*. It must be in writing, and acknowledged, but a grant or quitclaim deed to the property, if executed after the application to purchase has been made, operates as an assignment An assignment of a Certificate vests in the assignee *whatever rights his assignor possessed under the Certificate,* including that of receiving a patent from the state. *The assignee acquires no more or better right, but stands in the same position as his assignor. He takes but an equitable interest, and so takes subject to prior equities.* If, upon payment of the balance of the purchase money by the assignee a patent issues to the assignor, he holds the title in trust for the assignee". (Italics supplied.) (21 Cal.Jur. 714-715, and cases cited).

 Taylor v. Weston et al., 77 Cal. 534, 20 P. 62, 63, decided in 1888, when this state also had provision for the recordation of sales or transfers of certificates of purchase [18] and when the court had before it the status of an assignee of a certificate of purchase, stated the law as follows:

"On March 12, 1884, a certificate of purchase was issued to Weston; and on the 15th of the same month he assigned this certificate to the defendant Payne, *who paid value for the same, and who had no knowledge of the falseness of Weston's affidavit.* The court below gave judgment in favor of Payne, and the plaintiff appeals. We think the judgment was wrong.

"* * * And at the time Weston's application was filed the condition imposed was that the applicant should be an actual settler. * * * Weston's affidavit as to his being an actual settler having been false, his proceedings were invalid.

"Payne, being the assignee of Weston, was in no better position. The court below held that Payne was protected by the rule as to innocent purchasers for value; in other words, that a certificate of purchase is negotiable, like a promissory note. * * * With deference to the views of that learned judge, we do not think that the rule as to bona fide purchasers applies. * * *

"Upon the most favorable view for the respondent, his position can be no better than if he had acquired a contract of purchase made by a private party; and in such case the rule as to bona fide purchasers would not apply, because his purchase would not be of the legal title, but of an equitable interest. The general rule, subject to some exceptions and qualifications, is that the purchaser of an equitable interest is not protected as a bona fide purchaser. The authorities cited below are conclusive to this effect. In Vattier v. Hinde, 7 Pet. [252] 271, [8 L.Ed. 675], the deed under which the party claimed was from one who had no title at all. * * * Marshall, C. J., said: *'The rules respecting a purchaser without notice are framed for the protection of him who purchases a legal estate, and pays the purchase money without knowledge of an outstanding equity. They do not protect a person who acquires no semblance of title. They apply fully only to the purchaser of the legal estate. Even the purchaser of an equity is bound to take notice of any prior equity.'* This language was adopted by Story in his treatise on Equity Jurisprudence. See Volume 2 (13th Ed.) § 1502, pp. 825, 826. And in another

18. Sec. 69 of Chapter 415 of Stats.1867-68, page 528, (amended by Stat.1943, ch. 609, Sec. 1, page 2207, Sec. 7723 of Public Resources Code of California), then read as follows:

"Sec. 69, Certificates of Purchase and all rights acquired thereby shall be subject to sale and transfer, by deed or assignment, executed and acknowledged before any officer authorized by law to take acknowledgments of deeds, or before said Register, but all such sales or transfers shall, when recorded by the County Recorder, be reported by him to the Register, to be entered in the books of his office."

place that learned and cautious writer, speaking of the rule as to *bona fide* purchasers, says: 'The purchaser, however, in all cases must hold a legal title, or be entitled to call for it, in order to give him the full protection for his defense; *for if his title be merely equitable, then he must yield to a legal and equitable* title in the adverse party.' Id. vol. 1, § 64c, p. 64.

"The recording laws doubtless somewhat enlarge the rule as stated above. Under their operation the purchase of an apparent legal title may in some cases be protected by the rule as to bona fide purchasers, although his grantor had no title at all. * * *. 'It is only the honest purchaser of a legal title whom equity will not disturb. If the purchase be of the legal title, but with notice of an equity in another; or if it be only an assignment of an equity, with or without notice of a prior equity in another person,—in either case the estate must in the hands of the purchaser answer all the claims to which it would have been subject in the hands of the vendor.' So in Chew v. Barnet, 11 Serg. & R. Pa., 389, it was held that a purchaser claiming through a contract of purchase was not a bona fide purchaser within the meaning of the rule. And Gibson, J., delivering the opinion, said: 'When we hear, therefore, of a purchaser for a valuable consideration taking the title free from every trust or equity of which he had not notice, it is intended that he is the purchaser of a title perfect on its face; for every purchaser of an imperfect title takes it with all its imperfections on its head. It is his own fault that he confides in a title which appears defective to his own eyes; and he does so at his peril. Now, every equitable title is incomplete on its face. It is, in truth, nothing more than a title to go into chancery to have the legal estate conveyed; and therefore every purchaser of a mere equity takes it subject to every clog that may lie on it, whether he had notice of it or not.' So in Dupont v. Wertheman, 10 Cal. [3, 4], 369, it was held that the rule as to bona fide purchasers did not protect a party who took a contract which did not amount to a conveyance, but at most gave a mere equitable right. And Field, J., de-

livering the opinion, said: 'The purchaser of an equitable title takes the property subject to all existing equities. He is not within the rule which protects a bona fide purchaser for value and without notice of the real or apparent legal title. He must take the imperfect title with all its imperfections.' And this case was approved in Reynolds v. Harris, 14 Cal. [668], 680, [76 Am.Dec. 459], in which it was said that the rule as to bona fide purchasers did not protect the assignee of a sheriff's certificate of purchase. * * *

"In the case before us the person through whom the respondent claims had only a contract of purchase. It is undisputed that the legal title is in the state; the very object of the proceeding being to determine who is entitled to a conveyance from the state. What is called a 'certificate of purchase' (although treated as evidence of title as between third parties) is, as against the state, merely evidence of a contract to convey; and the respondent must establish his right against the state, each party in this kind of proceeding being an actor. Dillon v. Saloude, 68 Cal. [267], 269, 9 P. 162. Hence the rule as to the purchase of equitable interests applies; and it has been applied by courts of authority to cases in relation to the acquisition of public lands. In Root v. Shields, Fed.Cas.No.12,038, Woolw. [340] 364, it was applied by Mr. Justice Miller to the assignee of a preemption claim. In Craig v. Leiper, 2 Yerg. [Tenn.] 193 [24 Am.Dec. 479], it was applied, in an able opinion by Catron, J., to the grantee of the rights acquired by an entry and land-warrant under the early land laws. In Stout v. Hyatt, 13 Kan. [232], 243, 244, it was applied to the assignee of a pre-emption claim for school lands under the territorial laws of Kansas. And in Maghee v. Robinson, 98 Ill. [458], 466, it was applied to the assignee of a swamp-land certificate of purchase. See, also, Chrisinger's Case, 4 Dec.Dep.Int. 347. We think, therefore, that the court below erred in holding the defendant Payne to be protected by the rule as to bona fide purchasers.

"It is hardly necessary to add that, in what we have said, we have no reference

to cases where the legal title has passed to the person through whom the bona fide purchaser claims."

■ It will thus be seen that the assignee of a certificate of purchase is not aided by the rule protecting bona fide purchasers for value, because he is not the purchaser of the legal title but acquires an equity merely. See also Hawley v. Diller, 178 U.S. 476, 20 S.Ct. 986, 44 L.Ed. 1157, as to what constitutes being a bona fide purchaser for value.

*Recapitulation and conclusions of the court:*

In recapitulation, this court is holding:

(1) That the assignment, so called, from H. E. Bennett to June Knapp, dated August 18, 1930, is invalid for the reason: (a) that it was not, in this court's opinion, a bona fide assignment; and (b) for the further reason that it was not acknowledged pursuant to the statute;

(2) That the quitclaim deed from H. E. Bennett to Mrs. June Knapp, dated November 12, 1930, was a genuine quitclaim deed, no satisfactory evidence having been introduced to dispute this fact, and passed or would pass the present and after-acquired legal title of H. E. Bennett to the grant or patent to Mrs. Knapp;

(3) That W. J. Wadhams, by his grant deed from H. E. Bennett, et ux., dated December 26, 1931, and recorded prior to the recordation of the quitclaim deed from H. E. Bennett to Mrs. Knapp, was not a purchaser in good faith and for a valuable consideration under the recording statutes and the case law of California, for the reason (a) that the facts within his knowledge, considering his experience, would have led him to actual knowledge or notice of the interest of June Knapp in the locus in quo and which is tantamount to actual knowledge or notice; (b), that his Estate did not prove consideration for his deed; (c), that the sum of $10, alleged to be the consideration for his deed, even had it been proved, would not have constituted a valuable consideration; and (d) a fortiori, this certificate of purchase involving only the transfer of an equitable title, that W. J.

Wadhams could not be an innocent purchaser for value, i. e., a bona fide purchaser, and could acquire no better title than his assignor, H. E. Bennett, had to give him, which was nothing, in view of H. E. Bennett's prior quitclaim deed to Mrs. June Knapp.

■ The result is that as of the date of the Declaration of Taking by the Government, on August 28, 1946, and the Decree on the Declaration of Taking on August 29, 1946, when title to the locus in quo vested in the Government, Mrs. June Knapp had a prior right thereto over the Estate of W. J. Wadhams, deceased.

Counsel for Mrs. June Knapp will prepare Findings of Fact and Conclusions of Law, and a Judgment, in accordance with this Opinion, for the signature of the court, within ten days after notice thereof, having meanwhile submitted both documents to counsel for the Estate of W. J. Wadhams, and for the United States Government, for approval as to form.